GAINESVILLE WATER COMPANY V. CITY OF GAINESVILLE.

No. 2124.    Decided May 18, 1910.

1.—Findings of Fact—Jurisdiction of Supreme Court.

The Supreme Court has no jurisdiction to disturb findings of fact by the trial court which are supported by evidence legally sufficient therefor, but will consider all the evidence to determine. as a question of law, its sufficiency to support a finding necessary to sustain the judgment.   (P. 398.)

2.—Water Company—City—Forfeiture of Franchise.

The general principles governing the right of a city to maintain action to forfeit the franchises granted by contract to a water company discussed and stated,   State v. Morris & Cummings, 73 Texas, 442, approved.   (Pp. 398, 399.)

**3.—Same—Sufficiency of Evidence.**

In an action by a city to forfeit the franchise granted to a water company by contract with the city ·council whereby it acquired the right to erect and maintain its plant with pipes in the public streets, etc., the evidence is considered and held insufficient in law to support the following findings of fact by the trial court and a judgment of forfeiture based thereon:

(1) That the water company was insolvent and unable to perform its contract with the city—it appearing that the company had always been able to meet the interest on its debt and its current expenses, and had a cash balance in its treasury, and had shown actual capacity for conducting its business, though there was evidence that its bonded indebtedness exceeded the value of its assets. (P. 399.)

(2) That it failed to furnish, as undertaken by its contract, water suitable for domestic use and in quantities sufficient to meet the needs of the city and its citizens for domestic use and for fire protection, there being evidence to show that the water submitted to chemical analysis by the city at a certain time and under then existing conditions was unfit for domestic use, but insufficient to establish the wilful and persistent failure to furnish wholesome water in quantities and according to tests agreed on, which was necessary to authorize a forfeiture of the franchise. (Pp. 399, 400.)

(3) That the company was never capable of discharging the amount of water and to the height stipulated in the contract, for fire protection, the evidence showing a formal acceptance of the plant by the city as a compliance with the contract and a failure to demand of the company tests of its capacity from time to time as provided by the contract. Palestine W. & P. Co. v. City of Palestine, 91 Texas, 540, distinguished. (Pp. 400, 401.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Cooke County.

The city of Gainesville sued the Gainesville Water Company and recovered judgment, which was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Potter & Culp* and *Gregory, Batts & Brooks,* for plaintiff in error. —The court erred in finding as a fact that appellant is insolvent, because there is no evidence to support this finding. Insolvency is inability to meet obligations as they mature: Smith v. Ojerholm, 93 Texas, 37; College Park Elec. Line v. Ide, 15 Texas Civ. App., 273; Blum v. Welborne, 58 Texas, 161; Toof v. Martin, 80 U. S., 40; Buchanan v. Smith, 83 U. S., 277. To authorize forfeiture there must be irretrievable embarrassment and inability to progress with the enterprise: State v. Southern Pac. Ry. Co., 24 Texas, 130. Future earning capacity, goodwill and value of franchise (even when the city is seeking to take the plant) must be considered in arriving at value: National Waterworks v. Kansas City, 62 Fed., 865, 866; Newburyport Water Co. v. Newburyport, 85 Fed., 723, and 103 Fed., 584; Bristol v. Bristol Waterworks,· 49 Atl., 974. To authorize forfeiture there must be gross and wilful failure (not temporary) in performance of vital and essential duties: Water Co. v. City of Palestine, 91 Texas, 548; State v. Morris, 73 Texas, 442; State v. So. Pac. Ry. Co., 24 Texas, 130; State v. Janesville Water Co., 32 L. R. A., 391, and 92 Wis., 496; State v. Com. Bank, 10 Ohio, 535; Booth on Street Railways, sec: 52. Must be fair notice of defects and reasonable opportunity to correct: City of Winfield v. Water Co., 51 Kan., 85, 86; Water and L. Co. v. City of Lamar, 140 Mo., 157;

Waterworks Co. v. City of Burlington, 43 Kan., 730; Sykes v. City of St. Cloud, 60 Minn., 450-452.

*J. T. Adams, J. H. Garnett* and *Davis & Thomason,* for defendant in error.—The long and persistent failure of the water company to furnish water suitable for domestic use, and to furnish pressure for fire protection, as required by its franchise, as well as its long and continuous failure to live up to the requirements of its franchise in other respects, not only justified but required the forfeiture of its franchise. Palestine Water Co. v. City of Palestine, 91 Texas, 540; Farmers Loan & Trust Co. v. Galesburg, 133 U. S., 156; Capital City Water Co. v. State, 105 Ala., 406, 29 L. R. A., 743; Stedman v. Berlin, 97 Wis., 505; City Water Co. v. State, 33 S. W., 259; Foster v. Joliet, 27 Fed., 899; Galesburg v. Galesburg Water Co., 34 Fed., 675.

MR. JUSTICE BROWN delivered the opinion of the court.

In the year 1883 the city of Gainesville was a municipal corporation, organized under the laws of this State with power to make the contracts hereinafter mentioned. The Gainesville Water Company was organized under the laws of this State in the year 1883, and on the 17th day of October of that year the city adopted an ordinance by which it granted to the company the franchise to construct its works, lay its pipes, etc., in the streets and alleys of the city. The franchise was to continue for a period of twenty-five years from that date with the privilege at the end of that time for the city to buy the works at its appraised value, and in case it should fail so to do the franchise was to be continued for another twenty-five years with the same privileges as those granted in the said ordinance. This ordinance was subsequently superseded by an amendment adopted in 1889; hence, it is unnecessary for us to set out its provisions in detail. The latter ordinance provided that the waterworks should be accepted by the city when compliance with the requirements of the contract should be demonstrated by a test made in the presence of the city council, or some committee appointed for that purpose. On the 28th day of March, 1884, the city council adopted this resolution:

"Whereas, the Gainesville Water Company has complied with its contract in the construction of waterworks in the city of Gainesville, said contract being dated the 17th day of October, 1883, and has been fully and satisfactorily demonstrated by actual tests this day in our presence."

On the 16th day of March, 1889, the city council adopted an amendment to the ordinance of 1883, which, in the main, conformed to the provisions of the prior ordinance, but contained, in addition, the following provision: "It shall be the duty of the water company at any time, upon demand by the mayor or city council, to make such tests as to the capacity and condition of the works of said water company as required in section 4 of this ordinance, and said water company shall each and every week open each and every fire hydrant in this city, and shall at all times keep said hydrants in repair and in good condition at its own expense."

In the year 1897 a holder of bonds of the water company sued the city of Gainesville in the Federal Court at Dallas, Texas, but the water company was not made party to the suit. A compromise was made between all of the parties and an agreement was entered into which modified the ordinance of 1889 only in regard to the amount to be paid to the water company by the city for rental of hydrants and contained the following provisions:

"3d. The water to be furnished to the city of Gainesville and its inhabitants through said system of waterworks shall be water suitable for domestic consumption and in sufficient quantities to supply the city of Gainesville and its inhabitants.

"4th. In all other respects said ordinance and contract of March 16, 1889, shall be and remain in full force and effect."

On the 27th day of June, 1907, the city of Gainesville instituted this suit against the water company to forfeit its franchise whereby it maintained its plant in the streets of the said city.

A trial was had before R. E. Carswell, special judge, without a jury, and after hearing the testimony he filed findings of fact from which we extract the following part of the findings which are material to the issues necessary to be discussed by us:

"Prior to the 2d day of February, 1897, the defendant obtained its supply of water from Elm Creek, which supply was insufficient and became exhausted during dry seasons, and was foul and impure and unfit for domestic use. . . . The defendant sank a deep well and secured a supply of artesian water for its system, which well is a few feet from a large shallow well which the defendant had previously constructed, and the water from the artesian well is first pumped into the large well, and from there forced into the defendant's mains. This well is probably hardly sufficient to supply the demands for water, but it is soft, wholesome water and well suited for domestic use; but if the well is not sufficient to supply the demand, at a reasonable cost other wells could be sunk and an abundant supply of artesian water obtained.

"Defendant has frequently been requested by plaintiff's authorities to sink another artesian well and to furnish artesian water exclusively, but has always refused to do so, claiming that the water furnished was as good as the contract required. . . . .

"And that the defendant is insolvent and unable to improve its fire service or to improve its water supply, even if it so desired, and is making no effort so to do.

"The provisions of said ordinance in reference to the quality of water furnished and the pressure to be given in case of fires were the main considerations for the enactment of said ordinance and material and vital to the franchise, and the defendant has persistently failed to comply therewith.

"The contract for hydrant rental set forth in the fourth clause of said franchise has seriously embarrassed plaintiff's city council in making the provisions they deemed proper for supplying the city and its inhabitants with water, and has tended to unduly fetter the successors of the council making said contract; and if sustained, will amount to the granting of an exclusive right and produce a monopoly."

In the application for writ of error counsel for the plaintiff in error entered into detail of the facts bearing upon the different points raised therein. The statement of facts contains more than four hundred pages, and we feel justified in taking the statements made in the application as correct wherein they have not been controverted by counsel for the defendant in error.

Counsel for the defendant in error makes this statement as a limitation upon the jurisdiction of this court in the examination of the case: "This court has nothing to do with facts, but deals with legal conclusions arising from facts." The statement is correct when applied to the truth of the facts found, which depend upon the preponderance of evidence, but upon the legal sufficiency of the evidence to sustain the judgment of forfeiture this court will look to all of the evidence. We will state the facts, so far as necessary, in connection with our discussion of each proposition of law.

Counsel for the defendant in error submits the following propositions in support of the judgment of forfeiture:

(1) The company did not construct the works on the Holly system, with a duplex compound condensing pumping engine.

(2) That the pumping capacity of the works did not equal a million, five hundred thousand gallons in twenty-four hours, nor the requirement that it should be able to pump two millions, five hundred thousand gallons in twenty-four hours under fire pressure.

(3) The waterworks plant was never capable of discharging simultaneously five one-inch streams of water through a two and one-half inch hose to the height of one hundred feet.

(4) That the company failed to maintain a brick or stone house for the protection of the machinery.

(5) It failed to furnish water suitable for domestic use and in quantities sufficient to meet the needs of the city and to its citizens for domestic use and for fire protection.

(6) It did not open its hydrants each and every week as required by the contract.

(7) That the company is insolvent and unable to perform its contract with the city.

We are of opinion that but three of these grounds require notice at our hands, to wit: The third, fifth and seventh. We shall therefore not discuss the other grounds which are mentioned, but address ourselves to those which we consider of importance and which present really serious questions.

In State v. Morris & Cummings, 73 Texas, 442, this court, speaking by Chief Justice Stayton, said:

"It is not true that the forfeitures of such franchises are declared for the purpose of punishment, but they are declared and authorized to be declared when this becomes necessary for the protection or welfare of the public. . . .

"There being no statutory cause for forfeiture prescribed, and common law grounds for this alone being relied upon, reference must be had to the general objects of the enterprise for which the franchise was granted. Whenever facts are presented which conclusively show that the high public trusts involved in them have been grossly abused

to the public detriment, or that the holder of the franchise has placed himself or is placed in such irretrievable embarrassment as to be certainly unable to progress with the enterprise contemplated by the charter, then the State has a right to resume the franchise. State v. Southern Pac. Ry. Co., 24 Texas, 131."[2] Thompson Corp., vol. 5, sec. 6609; People v. N. R. Sugar Refining Co., 121 N. Y., 582, 18 Am. St. R., 843; see an elaborate note in 8 Am. St. Rep., 179-202.

In People v. North R. Sugar Refining Co., cited above, the court said: "It appears to be settled that the State as prosecutor must show on the part of the corporation accused some sin against the law of its being which has produced, or tends to produce, injury to the public. The transgression must not be merely formal or incidental, but material and serious, and such as to harm or menace the public welfare. For the State does not concern itself with the quarrels of private litigants. It furnishes for them sufficient courts and remedies, but intervenes as a party only where some public interest requires its action."

The city of Gainesville represents the State, being clothed with sovereign power to grant and revoke such privileges, and its case must proceed upon the same high plane as would the case if prosecuted by the State. The interest of the public must be the foundation upon which a forfeiture rests.

In order to justify a forfeiture of the franchise in this case the testimony must show with reasonable certainty that to the material detriment of the city the water company has wilfully abused the trust created in favor of the public by its contract, or it must appear that by its insolvency it is placed in such irretrievable embarrassment as to make it reasonably certain that it is unable to proceed with the performance of its contract. In the examination and discussion of these questions we must look to the whole case as it is made by the evidence.

We will consider the questions in their inverse order, first disposing of that which relates to the ability of the company to proceed with its contract. The evidence shows that the company has a large outstanding indebtedness and the estimate made of the value of its property by one of the experts would show that its assets are worth greatly less than its indebtedness, but by another expert it is shown that its assets exceed its liabilities. The evidence, however, shows that the company has paid all of the interest on its outstanding bonds, has paid its current expenses promptly and has a balance in its treasury; in fact, the company makes a clean showing upon its actual capacity for conducting the business, the evidence showing that it meets promptly, at stated intervals, every accruing liability. We conclude that it can not be said the company is in a condition which disables it from performing its contract with the city. The public is not interested in the value of the bonds or their payment except as it may affect the ability of the company to perform its contract.

The evidence with regard to the quality of the water furnished by the company is quite conflicting. It appears beyond question that the city did not call for a test of the water, but the company sought an agreement with the city by which they would join in having the

water tested by competent chemists, but the city declined and proceeded to have the water tested by a chemist of its own selection and the manner of procuring the water with which the tests were made for the city shows that the most unfavorable conditions existed when the city secured the specimen, under circumstances which indicate that the conditions then existing were temporary, being caused by recent floods or heavy rains. The specimen upon which the chemist based his statement that it contained such matter as would cause a long list of various diseases mentioned by him was obtained from a *pool standing upon the surface of the ground after a rain.* The expert who examined that water stated, in substance, that if that character of water were used by the people, epidemics of various malignant diseases would prevail. No such epidemics have occurred in the city, which is a potent fact in rebuttal of the claim that the water was continuously polluted. This fact justifies the conclusion that the water tested did not fairly represent the supply given to the city. The other specimen examined by him was not found to be of such seriously objectionable quality. On the other hand, the evidence of the chemist who testified on behalf of the company showed that the water that he procured from hydrants through which it passed for domestic consumption was fairly pure and was good for domestic purposes. The facts would sustain the finding of the court to the extent that the water from which the specimen was taken under then existing conditions was unfit for domestic use, but insufficient to establish the wilful and persistent failure to furnish wholesome water, which is necessary to authorize a forfeiture of the franchise. With regard to the quantity supplied the honorable district judge who tried the case held simply that the artesian well was *"probably"* insufficient to furnish water for the needs of the whole city, but the evidence does not prove with reasonable certainty that the supply from all sources was materially insufficient.

The president of the company testified that he had never heard of any complaint with regard to the quality of the water until a short time before this suit was filed, and that he asked the mayor of the city what was the matter, who replied, substantially, that there was nothing the matter, you have rendered good service; there is some complaint now and then about the water but it does not amount to anything. This was not denied. Whatever may be the truth as to the quality of the water, the evidence presents such contradictions and uncertainty as forbids that a court should, upon that ground, destroy the property of the water company by taking away its franchise, which would be practically a confiscation of the plant.

When the original contract was made in 1883 it contained a provision that when the company should complete the waterworks in compliance with the contract, the company should demonstrate by practical tests a full completion and compliance with all the requirements of the contract. After this test had been made the city council on the —— day of March, 1884, adopted a resolution to the effect that after a thorough test had been made in the presence of the council the works were found complete and were accepted by the city. In 1889 the city council adopted an amendment to the original resolu-

tion in which was embraced this provision: "It shall be the duty of the water company at any time upon demand by the mayor or the city council to make such tests as to the capacity and condition of the works of the said company as required in section 4 of its ordinance." The compromise agreement made between the city, the water company and the creditor in suit at Dallas, provided that the ordinance of 1889 should remain in force except a reduction of the rental to be paid for hydrants. The city pleaded in that suit the failure of the company to furnish the required quality of water and a failure to provide the required pressure. The court finds that at that date the water was unfit for use, yet the city continued the contract with full knowledge of all of the facts.

It is stated in the application for writ of error and not controverted that no demand for any test of the capacity of the works to throw the water one hundred feet high in accordance with the terms of the contract was ever made by the city. It is also stated as a fact, which is not denied, that the city had suffered the loss of but few houses by fire during the twenty-five years which the company had been operating in the city. While the testimony showed that in some instances the pressure was weak and that at times the company was not prompt in putting on the pressure so as to give the benefit of the water, it was also proved that in many instances the fire was well under way before notice of it was given to the company. In fact, the evidence upon this question is so conflicting that it can not with any degree of certainty be said that the failure of the company to furnish the amount of pressure which was required by the contract has resulted in serious loss to the city or its citizens.

There is a broad difference between this case and Palestine Water & P. Co. v. City of Palestine, 91 Texas, 540. In that case the city officials made frequent and urgent demands upon the water company to perform its duties to the city, which demands were ignored. In this case the city of Gainesville had the express right to demand tests to determine definitely the actual condition of the plant, but remained silent. How can it be said that the water company wilfully neglected to perform its obligations which were so lightly regarded by the city that neither demand for test nor complaint of the failure, in either respect was made to the company?

We realize that this is an important matter to the city. Fire protection is of great importance to its people from different standpoints. No less important is wholesome water for domestic purposes, and if it were made to appear in this case that the water company had wilfully and persistently refused to perform its contract with the city in those particulars, or that it was rendered unable by reason of its financial embarrassment so to do, then it would be the duty of the court to declare a forfeiture of the franchise.

The evidence in this case would sustain a judgment for damages for violation of the contract if damages were sought and proved, but it is insufficient, as a matter of law, to authorize a court to forfeit the franchise of the water company. It is ordered that the judgments of the District Court and Court of Civil Appeals be reversed and that the cause be remanded.