[Civil No. 3608.   Filed September 23, 1935.]

[49 Pac. (2d) 391.]

PHELPS DODGE CORPORATION, a Corporation, Petitioner, v. INDUSTRIAL COMMISSION OF ARIZONA, J. NEY MILES, HOWARD KEENER and L. C. HOLMES, as Members of Said Industrial Commission, and FRANK EADS, Respondents.

Messrs. Ellinwood & Ross, Mr. William A. Evans and Mr. Denison Kitchell, for Petitioner.

Mr. Don C. Babbitt and Mr. Emil Wachtel, for Respondent Industrial Commission.

Mr. H. S. McCluskey, for Respondent Frank Eads.

ROSS, J.—This proceeding comes to us on the petition of Phelps Dodge Corporation seeking a review of an award of the Industrial Commission granting compensation to Frank Eads, who, it is admitted, while working for the petitioner in its mines at Bisbee on March 26, 1934, was injured by an accident arising out of and in the course of his employment.

The commission's first award was adverse to respondent, but upon a rehearing an award was made in his favor. The facts are not in much dispute nor is there much controversy over the commission's findings, but the parties are widely apart as to what the conclusions of law should have been.

Briefly, on March 26, 1934, respondent Eads and one Quinn were working in petitioner's mines in sulphide ores. A blast of a "missed hole" caused the shafts and drifts to fill up with smoke, sulphur gas and dust through which Eads and Quinn were compelled to run some four or five hundred feet to reach fresh air. The exertion and the inhaling of the

poisonous air caused Eads to choke, cough, vomit and lose his breath. The gas irritated his eyes and mucous membranes. He was unable to speak for a few moments after his escape. As a result of his experience he suffered temporary pulmonary disorders, inflammation of the respiratory organs and of his eyes and nose, and has since been continuously disabled.

There were some fourteen doctors who testified or certified their diagnosis as to the respondent's condition. The consensus of their expert opinion was that, while he had a pulmonary condition, it was not brought on or aggravated by his experience of March 26th. The doctors also pretty well agreed that respondent's trouble was neurosis, and that such condition was caused by the accident. None of the doctors, however, would say that the neurosis was caused by an injury received by respondent in the accident. The commission found that respondent's disability was not due to his pulmonary condition. The material finding by the commission, and pertinent to the points involved, is as follows:

"6. That the evidence is sufficient to establish that the above named applicant has been totally disabled continuously since March 26, 1934, by reason of a neurosis, traceable in part to circumstances arising out of and immediately following his alleged injury of March 26, 1934."

While this is more of a conclusion than a finding of fact, it is a determination of the Industrial Commission that in its judgment the evidence shows respondent's total disability is due to a neurosis not traceable to any injury sustained on March 26, 1934, but to the circumstances arising out of and immediately following an alleged injury of that date. The petitioner concedes there is evidence in the record to sup-

port this deduction of the Industrial Commission, and its correctness is not questioned by respondent. On the contrary, he asserts that the Industrial Commission's "decision upon rehearing" is supported by both the law and the evidence. The evidence is very voluminous, and since counsel have not directed our attention to any portion of it conflicting with or contradicting the determination of this ultimate fact, by the commission, we treat it as final.

It is conceded by petitioner that respondent was in an accident arising out of and in the course of his employment; that such accident consisted of unexpectedly encountering smoke, dust and sulphur gas, released by blasting operations, which were carried to respondent by the prevailing air currents. It is also said by petitioner:

"In view of the fact that the Industrial Commission has found that he was totally disabled by reason of neurosis, which finding is supported by some evidence in the record, though slight, we must, under the decisions of this court, concede such disability to exist."

We, then, shall look at the case as one of total disability caused by accident arising out of and in the course of the employee's employment.

The legal proposition submitted by petitioner is this:

"Disability resulting from neurosis, even though the neurosis is caused by accident arising out of and in the course of employment, is not compensable except where it is produced or aggravated by an injury."

The legal proposition submitted by respondent, based upon the ultimate facts as they appear to him, is stated as follows:

"When as the approximate result of an accidental personal injury sustained by an employee, arising out of and in the course of his employment, such employee,

after all objective and subjective symptoms of actual physical injury are removed, suffers from a nervous breakdown, and a neurasthenic condition ensues, attributal to such injury, which precludes the employee from resuming his work in his former occupation, such mental condition is an injury arising out of and in the course of his employment and is compensable under the provisions of the Arizona Workmen's Compensation Law.''

The answer to these propositions, which seem to be practically the same, must be found in section 8 of article 18 of the state Constitution, providing for the Workmen's Compensation Law and directing the legislature to pass such law, which section was approved as an amendment to the Constitution on September 29, 1925, and the act passed by the legislature in pursuance of this amendment. The constitutional mandate to the legislature was to enact a workmen's compensation law ''by which compensation shall be required to be paid to any such workman, in case of his injury . . . by his employer, if in the course of such employment personal injury to . . . any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment.''

The legislature, in response to said mandate, by section 1421, Revised Code 1928, provided that:

''Every employee, hereinbefore designated, who is injured . . . by accident arising out of and in the course of his employment . . . shall be entitled to receive, and shall be paid . . . compensation for loss sustained on account of such injury.''

Thus the constitutional provision and the legislation supplementing such provision clearly contemplated that an injury to an employee by accident is compensable, whatever that injury may be.

■ The different provisions of the Compensation Law fix compensation for disability resulting from injury. The enumeration of specific injuries and the compensation fixed therefor in section 1438, Id., illustrate this. Mental or physical suffering which does not lessen the employee's ability to work and earn wages is not compensable, the theory and idea of the law being to remunerate or compensate the employee to the extent of disablement by reason of his injury. The injury may be a disease, as is evidenced by the legislative construction (found in section 1420, Id.) of the phrase "personal injury by accident arising out of, and in the course of the employment" as including "an injury caused by the wilful act of a third person directed against an employee because of his employment," but as not including "a disease unless resulting from the injury." There is no question but that *neurosis* is a disease.

"1. Med. A functional nervous affection or disease; that is, a disease of the nerves without any appreciable change of nerve structure." Webster's New International Dict. (1930).

"1. A nervous disease; more especially a functional disorder of the nervous system; a disorder of the nervous system not dependable on any discoverable lesion." American Illustrated Medical Dict. (Dorland).

"A large number of diseases clearly related to the nervous system and manifested on its part by disturbance of functional control are not marked by known changes in the neural apparatus. They are denominated neuroses or functional nervous diseases." Nervous and Mental Diseases, Church-Peterson.

Now, referring back to petitioner's and respondent's legal propositions: Both convey the idea that, to entitle an employee to compensation for disability from a disease, the disease must result from an injury or, as put by petitioner, be "produced or aggravated

by an injury" and by respondent be "attributal to such injury." There is no finding by the commission that respondent's neurotic condition is the result of any injury he suffered, the finding being that it was "traceable in part to circumstances arising out of and immediately following his alleged injury."

In *Pierce* v. *Phelps Dodge Corp.*, 42 Ariz. 436, 26 Pac. (2d) 1017, we said:

"Our statute in section 1420, Rev. Code 1928, construes for certain purposes the phrase 'personal injury by accident arising out of, and in the course of the employment,' and it is specifically stated that it 'does not include a disease unless resulting from the injury.' It is obvious from this that when compensation is awarded in any manner for a disease there must have been (a) an unexpected event which was (b) the cause of an injury to the person, (c) which injury must have produced or aggravated a disease."

We think this decision settles the matter against respondent.

We are not questioning the correctness of respondent's legal proposition, but, on the contrary, think it states the law. The only difficulty in applying it here is that it does not fit the facts as found by the commission. If the commission had found that respondent's neurosis was caused by an injury sustained in the accident of March 26th, or if the evidence had shown such to be the case, then the award would have been proper. The plain language of our statute makes it imperative that the disease be the result of an injury.

While the commission in its findings did not so state, the only conclusion to be drawn therefrom is that the commission believed respondent's neurosis was not induced by any personal injury he suffered but by a deep-set fear or apprehension of imaginary ailments that might follow as a result of his injury

and the deplorable condition in which his family might be left. There was medical testimony to sustain such a conclusion. Whether this be a correct conclusion or not, it is not necessary to determine. There being no finding that the respondent's neurosis was the result of an injury, he must necessarily fail, as our statute makes that indispensably necessary to entitle him to compensation for disease.

For the reasons set forth, the award is set aside.

LOCKWOOD, C. J., and McALISTER, J., concur.