# OWEN B. HOOD v. TEXAS INDEMNITY INSURANCE COMPANY.

No. A-1361.  Decided February 11, 1948.
Rehearing overruled March 31, 1948.
(209 S. W., 2d Series, 345.)

*Phillips, Norton & Smith* and *Warren B. Phillips,* of Corpus Christi, and *L. Hamilton Lowe,* of Austin, for petitioner.

*Kleberg, Eckhardt, Mobley & Roberts* and *M. Harvey Weil,* all of Corpus Christi.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is a workmen's compensation case. Petitioner alleged that while engaged in work for his employer he suffered injuries to his left foot and right elbow which resulted in total and permanent disability. At the trial he introduced testimony of lay witnesses and one medical expert which, if believed, would have sustained a finding of total and permanent disability. Respondent, in rebuttal, offered the testimony of lay witnesses and also that of four medical experts. According to one of those experts, petitioner suffered but slight injuries and was able to return to work in a few days. Two other of those experts testified that petitioner was suffering from arthritis. The other expert was Dr. William B. Cline, a psychiatrist, whose testimony will be considered in detail below, but for present purposes it may be stated that his opinion was that petitioner's continued disability was due to neurosis.

The case was tried before the court without the services of a jury. The court adopted the theory advanced by Dr. Cline and entered judgment for petitioner embracing the following items: $877.45 for total incapacity to the date of judgment, November 25, 1946; $367.48 payable in weekly installments of

$12.98 each for 26 weeks for 75% partial disability. The Court of Civil Appeals reduced that judgment to $69.24, that being compensation for four weeks of total disability. In effect that court reversed the trial court's judgment and rendered judgment in favor of respondent. The ground upon which the judgment of the Court of Civil Appeals was based was that there was no evidence supporting the findings of the trial court that petitioner suffered compensable disability except for four weeks following the injury. (208 S. W. (2d) 658.)

■ The decision of the Court of Civil Appeals is based solely upon its interpretation of the opinion testimony of Dr. Cline, a witness for respondent. That character of testimony is but evidentiary and is never binding upon the trier of facts. The trial judge would have been well within his province in rejecting all of the theories of Dr. Cline and in adopting the theory of petitioner's witnesses. He chose to adopt the general theory of Dr. Cline, but by so doing it does not follow that he was bound to adopt all of his conclusions. He could adopt them in part and reject them in part. Our view is that, regardless of how Dr. Cline's testimony should be interpreted, the Court of Civil Appeals should not have rendered a judgment thereon contrary to that of the trial court. Opinion testimony does not establish any material fact as a matter of law.

■ But, as we view the testimony of Dr. Cline, it affords not only some evidence but much substantial and, to our minds, convincing evidence in support of the findings of the trial court. Those findings material to the question now being discussed may be briefly summarized as follows: Petitoner sustained an injury to his left foot and right elbow on December 15, 1945; as a result he was totally disable for a period of four weeks; by that time he had developed, as a proximate result of such injuries, a neurosis by reason of which he was totaly disabled up to the date of judgment and will suffer 75% disability by reason of said neurosis for a period of six months from the date of judgment. Additional findings of fact were that petitioner's physical injuries to his foot and elbow consisted only of flesh wounds and severe contusions which were disabling for a period of four weeks, after which period he suffered no further disability from the physical injuries other than "neurosis resulting therefrom and which is disabling"; that petitioner's neurosis "is in part influenced by an unconscious desire for compensation, and after termination of this litigation he will begin to improve."

The testimony of Dr. Cline viewed from the standpoint of petitioner, the successful party in the trial court, may be summarized as follows: He examined the patient for nervous disorders on July 23, following his injury in the preceding December; that he found that petitioner then had shifting zones of anesthesia in the foot to which he had sustained the physical injury; that in his opinion the anesthesia was not due to organic nerve disorder, but was of mental origin; that petitioner was then unable to perform his ordinary tasks; that he was sick; that the ailment from which he was suffering was called neurosis; that it is disabling; that petitioner is not a conscious malingerer; that he has pain; that his anesthesia is not simulated; that he did not have neurosis prior to the date of his injury. He referred to the fact that soldiers in the recent war developed subconscious neurosis and testified that they were actually sick. The witness made a physical examination of petitioner in the presence of the court upon the trial and discovered that he still had a shifting zone of anesthesia in the same foot. He pricked that zone with a knife in the presence of the court and testified that petitioner felt no pain therefrom. He further testified that petitioner's condition was worse upon the date of the trial than upon the date of his prior examination, and that unless the case were terminated he would never recover. The first treatment which he prescribed was "soundanesthetis," by which is meant, as we understand it, a suggestive treatment, but he stated that where there is a reactive suggestion that treatment probably isn't of great value. Another prescription was the settlement of his claim. It was his opinion that petitioner would recover within six months from the settlement of his claim.

As we read Dr. Cline's testimony it is to the undoubted effect that petitioner's condition resulted naturally from the injury. He testified that the neurosis did not exist prior to the injury; that he did not know how long it had existed, but he judged that it was since the injury; that the injury undoubtedly accelerated the disability; and when the examination reached that stage where he was called upon directly to state whether or not there was any connection between the injury and the neurosis and whether or not the neurosis naturally flowed from the injury, he gave this testimony: "Q. In your opinion is the neuerosis that he has disabling? A. I have thought so. Q. Sir? A. I believe so. Q. Well, do you think there is any connection between his injury and the neurosis that he has? A. The simplest inference is that the neurosis arises from the injury. Q. And is a thing that naturally flows therefrom, that is in one who has the mental mechanics of it or whatever it is or one

who has that dormant condition a neurosis flows from the injury? A. Yes sir. Q. And you think it naturally flows from the injury he sustained? A. Yes." That is positive and direct evidence that petitioner's condition resulted from the injury.

■ It is contended that Dr. Cline's testimony conclusively establishes that petitioner's disability had its origin in a suggestion. It is disclosed that a few weeks after the injury a doctor in San Antonio told petitioner that he would be disabled for at least six months. In answer to a question as to whether that suggestion inspired the neurosis, Dr. Cline testified that "the suggestable became evident." Later on in his testimony the witness took pains to dispell the motion which appeared to be in counsel's mind that particular importance was attached by him to that suggestion. Before leaving the witness stand he gave this testimony: "A. Again I say that the suggestion that he might receive from outside sources is the minor thing, not a determining factor, although he is of the type to respond stronger to suggestion than the average individual. Q. And you don't know or do you know that his response came from the suggestion of the doctor in San Antonio? A. I don't know and I didn't give it very much value."

In our view this evidence gives ample support to the finding of the district court that the plaintiff's neurosis was a proximate result of his physical injuries, and that such neurosis is disabling. At the request of the defendant, the court made an additional finding that "plaintiff's neurosis is in part influenced by an unconscious desire for compensation, and after termination of this litigation he will begin to improve." Even if this finding be construed as meaning that the petitioner's unconscious desire for compensation is a contributing cause of his neurosis, still that is not inconsistent with the court's judgment, because under the Workmen's Compensation Law the injury need not be the sole cause of the disability. If it is a producing cause, the employee is entitled to full compensation to the extent of such disability, even though other factors also contribute to the disability. Texas Indemnity Insurance Company v. Staggs, 134 Texas 318, 134 S. W. (2d) 1026; Texas Employers' Insurance Association v. Parr (Com. App.) 30 S. W. (2d) 305.

■ The court's finding that the disability would be less than total after the date of the judgment was a proper reason for reducing compensation after that date. It is immaterial what causes the reduction in the extent of the disability; if it is re-

duced, then compensation should be reduced accordingly. If the court placed the date of the beginning of the improvement too early, in view of the continuation of this litigation on appeal after such date, this is an error of which respondent cannot complain.

Our Workmen's Compensation Law, Art. 8309, Sec. 1, defines injury as "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." This language should be liberally construed. Similar provisions of other statutes have been construed to cover just such a condition as is reflected by this record. A terse and accurate statement of the generally accepted holdings is made in Horovitz on Workmen's Compensation, pp. 75, 76, in this language:

"* * * Traumatic neuroses follows physical injuries are almost universally compensated, even though financial, marital and other worries play a part."

The authorities cited and others which could have been cited support the text and establish the general rule to be that neurosis of the character of that from which petitoner is suffering is a disease, and that, if it results from a physical injury, is compensable. Wareham v. United States Rubber Company, (R.I.) 54 Atl. (2d) 372; Armour Grain Company v. Indus. Com., 333 Ill. 801, 153 N. E. 699; Petterson v. Dept. Labor & Industries 178 Wash. 15, 33 Pac. (2d) 650; Skelly v. Sunshine Mining Co., 62 Idaho 192, 109 Pac. (2d) 622; Morris v. Garden City Co., 144 Kan. 790, 62 Pac. (2d) 920; O'Neil v. Industrial Accident Fund, 107 Mont. 176; 81 Pac. (2d) 688; Lee v. Lincoln Cleaning and Dye Works, 145 Neb. 124, 15 N. W. (2d) 330; In re Hunnewell 220 Mass. 351, 107 N. E. 934; Welchlin v. Fairmont Ry. Motors, 180 Minn. 411, 230 N. W. 897; Captiotti v. Philadelphia Inquirer Co., 156 Pa. Super. 509, 40 Atl. (2d) 880; E. I. DuPont, etc. v. Green, 116 Ind. App. 283, 63 N. E. (2d) 547; Porter v. W. Horace Williams Co., La. App. 9 So. (2d) 60; Schneider on Workmen's Compensation, Permanent Edition, Vol. 5, p. 242 et seq.

These authorities are very persuasive, but independent of authority our view is that a consideration of this case based alone upon the language and evident purposes of our workmen's compensation laws as applied to the facts would lend unerringly to the conclusions above announced. This man cannot use his physical powers. He is incapacitated to do physical labor. That incapacity is not simulated; it is very real. Then why should

he not be compensated; In our view it is no answer at all to say that it is because his disability resulted from his neurosis, when the evidence clearly warranted the finding by the trial court that the neurosis resulted from the physical injury.

In Houston & T. C. R. Co. v. Gray, 137 S. W. 729 (error refused), where the facts were strikingly similar to those in the instant case, a judgment for $30,000.00 damages for personal injuries was affirmed. The reasoning in the opinion in that case, to our minds, is applicable in the instant case and effectively answers the principal theory advanced by respondent herein.

We have inspected the brief filed by respondent as appellant in the Court of Civil Appeals and find that it contains no assignment challenging the findings of the trial court on the ground that they were against the great weight and preponderance of the evidence. Only questions of law of which this court has jurisdiction were presented. There is therefore no basis for a remand of this case either to the Court of Civil Appeals or the trial court. Liberty Film Lines v. Porter, 136 Texas 49, 146 S. W. (2d) 982. It is accordingly ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Associate Justice Garwood not sitting.

Opinion delivered February 11, 1948.

MR. JUSTICE SMEDLEY, dissenting.

I respectfully dissent from the opinion of the majority. It is erroneous in two important points that control the decision: First, in its ruling that the neurosis from which petitioner suffered as described in Dr. Cline's testimony is compensable; and second, in its conclusion that Dr. Cline expressed the opinion that petitioner's neurosis directly resulted from the damage done to the physical structure of his body in the accident.

It will be necessary to make a more complete explanation of the case and also to set out more of the testimony of Dr. Cline, since the majority opinion omits some, and makes only scant reference to some, of the most important parts of his testimony, and in doing so draws incorrect conclusions as to what opinion or opinions he in fact expressed.

For example, the majority opinion disposes of the opinion positively expressed several times by Dr. Cline, that petitioner's neurosis was of such character that it would be promptly cured by a settlement of the suit, by referring to it merely as another prescription that Dr. Cline suggested. And the majority opinion omits the parts of Dr. Cline's testimony which clearly show that in his opinion petitioner's neurosis had its source in mere suggestion rather than in the physical injury.

On December 15, 1945, petitioner suffered a somewhat trivial injury when he caught his foot in the door of an elevator and fell to the floor, striking his elbow. He filed this suit as an appeal from the award of the Industrial Accident Board, alleging that by reason of the physical injury he was totally and permanently incapacitated for work. The petition contains no allegations of neurosis or of disability caused by neurosis and on the trial petitioner offered no evidence about neurosis. His efforts were directed to endeavoring to prove permanent or a long period of incapacity resulting from the physical injury.

On trial by the court without a jury, judgment was rendered in favor of petitioner against respondent for $877.45, representing compensation at the rate of $17.31 a week for 49-2/7 weeks, with interest on past due installments, on account of total incapacity, and for 26 additional payments of $12.98 each per week on account of 75% partial incapacity. The Court of Civil Appeals reformed that judgment so as to reduce the amount awarded petitioner to $69.24, being compensation for four weeks, and affirmed the trial court's judgment as thus reformed. The opinion of the Court of Civil Appeals is published in 208 S. W. (2d) 658.

The trial court found as facts that petitioner, acting in the course of his employment, on December 15, 1945, suffered an injury to his left foot and to his right elbow; that as a result of these injuries he was totally disabled for a period of four weeks; that "by this time" petitioner had developed, as a result of the injury, a neurosis by reason of which he was totally disabled up to the day when the judgment was rendered, November 25, 1946; and that petitioner will suffer further disability by reason of the neurosis to the extent of 75% of total disability for a period of six months after that date.

On request of respondent the trial court made the following additional fact findings: That petitioner did not receive any broken bones or any nerve injury in the left foot or right el-

bow; that the physical injuries to the left foot and right *elbow* consisted only of flesh wound and severe contusion, which were disabling for a period of four weeks from December 15, 1945; that after the four weeks' period from the date of the injury petitioner suffered no disability from the physical injuries to his foot and elbow other than neurosis resulting therefrom and which is disabling; and that petitioner's neurosis is in part influenced by an unconscious desire for compensation, and after termination of this litigation will begin to improve.

The Court of Civil Appeals, in reforming the trial court's judgment, denied petitioner compensation for any of the period of disability that was caused by neurosis. The opinion of the Court of Civil Appeals, after referring to and quoting from the testimony of the specialist, from which the trial court made its finding as to disability by reason of neurosis, expressed this conclusion: *"We hold, however, that compensation cannot be awarded for a period of disability continuing after all physical and nervous damage to the structure of the body has been repaired, which persists solely because of the existence of a claim under the Workmen's Compensation Act."* Substantially the same conclusion is thus stated in the opinion on rehearing: *"We hold that disability, purely neurotic in nature, the continued duration of which is solely caused by the existence of a claim under the Workmen's Compensation Act, is not compensable under said Act."*

It is undisputed that petitioner suffered damage or harm to the physical structure of his body, from which incapacity for work resulted, but there was conflict in the testimony as to the duration of the incapacity. Several physicians testified. As petitioner correctly concedes, the testimony of one or more of them supports the trial court's conclusion that the incapacity for work resulting from the physical harm continued for no longer than four weeks. The question of an incapacity or disability existing thereafter and caused by neurosis was brought into the case by the testimony of Dr. Cline, a "physician and specialist in neurosis and psychiatry," who was called as a witness by respondent. And the question for decision here is the same as the question presented and decided in the Court of Civil Appeals, that is, whether compensation may be awarded for incapacity or disability caused by the neurosis to which Dr. Cline testified.

According to the provisions of our statute, payment of compensation is made for incapacity for work resulting from in-

jury. Article 8306, Section 10, Revised Civil Statutes of 1925. Injury is defined as "damage or hurt to the physical structure of the body and such diseases or infection as naturally result therefrom." Article 8309, Section 1, Revised Statutes 1925, as amended by Chapter 176, Section 1, Acts Regular Session 48th Legislature. Since the statute thus defines injury, incapacity caused by disease is compensable only when the disease is the direct result of damage or harm to the physical structure of the body. Buchanan v. Maryland Casualty Co., 116 Texas 201, 288 S. W. 116; Texas Employers Insurance Ass'n. v. Burnett, 129 Texas 407, 105 S. W. (2d) 200; Maryland Casualty Co. v. Broadway, (U. S. C. C. A. 5th Cir.) 110 Fed. (2d) 357. (By Chapter 113, Acts Regular Session, 50th Legislature, not applicable to this case, the definition of injury has recently been extended to include certain occupational diseases.)

Webster's definition of neurosis, which has been quoted with approval in several of the decisions, is: "A functional nervous disorder, without demonstrable physical lesion." As is shown by the same decisons, neurosis may be the result of trauma or of emotional shock, such as worry over business losses or family troubles, or may arise from a clash of personalities, a feeling of frustration, inadequacy, aversion for an occupation, and the like. Phelps Dodge Corporation v. Industrial Commission, 46 Ariz. 162, 49 Pac. (2d) 391; Star Publishing Co. v. Jackson, 115 Ind. App. 221, 58 N. E. (2d) 202; Smith v. Essex County Park Commission, 15 N. J. Misc. 227, 190 Atl. 45 Dr. Cline, testifying in the instant case as a specialist in neurosis and psychiatry, defined neurology as: "The science of dealing with diseases of nerves, physical disturbances of the nervous system." Another witness, Dr. Callison, who is a graduate of a college of osteopathy and surgery, testified that "Neurosis is a mental condition in which the mind assumes certain defects to be apparent in the body."

The majority opinion argues that neurosis is a disease and is compensable if it results from physical injury, and cites many cases from other states so holding. In some of those cases, all of which I have read, was the neurosis of a character like that of petitioner as described in Dr. Cline's testimony, and in all of them there was evidence that the neurosis was the direct result of physical injury. What the Court of Civil Appeals said in its opinion of the cases cited by petitioner, that none of them is "in point upon the peculiar facts disclosed by the record before us," is true of the cases cited in the majority opinion. It may be conceded that a true neurosis, that is, neu-

rosis not so purely mental, artificial and temporary that it disappears when settlement is made of the claim for compensation, is a disease and that for disability caused by true compensation may be paid, provided the neurosis is the direct result of the physical injury, but that is not this case.

The opinion of the majority undertakes to support its action in looking to isolated parts of Dr. Cline's testimony, without considering it in connection with the whole of his testimony, by invoking the general rule that the tried of facts may either accept or disregard opinion evidence. The doctor's testimony as to the character of petitioner's neurosis and of the disability caused by its is unequivocal. One needs only to read it. No fact question there. And as to casual connection between the physical injury and the neurosis, the problem in this case is to determine from the testimony of the witness whether he did or did not express the opinion that petitioner's neurosis was the direct result of the physical injury. This is a matter of interpretation of testimony and not the decision of a fact issue. The testimony of the witness must be examined as a whole in order to give true effect to it. Jones v. Traders & General Insurance Co., 140 Texas 599, 608, 169 S. W. (2d) 160. The court will look to all of the testimony to determine its legal sufficiency to support a finding that is essential to a party's case and the determination of this question is the decision of a question of law. Gainesville Water Co. v. City of Gainesville, 103 Texas 394, 128 S. W. 370. If upon examination of opinion evidence the court finds that it is wholly without probative value, it will be disregarded by the court as affording no basis for the judgment. Texas & New Orleans Ry. Co. v. Jeff Chaison Townsite Co. (Com. App.) 298 S. W. 399.

If, therefore, Dr. Cline's testimony is not reasonably interpreted as the expression of an opinion that petitioner's neurosis directly resulted from the physical injury, then there is no evidence whatever to support the finding of a casual connection between the physical injury and the neurosis, as no witness except Dr. Cline testified that petitioner suffered from neurosis or that he was disabled by neurosis. We look to Dr. Cline's testimony for the evidence both as to the character and as to the cause of petitioner's neurosis, and we state the substance of his testimony bearing upon those two questions.

Petitioner came to Dr. Cline's office July 23, 1946, having been referred to him by another physician, who requested that he examine petitioner to determine whether there was any evi-

dence of nerve injury in his right arm. (This was seven months after the time when petitioner suffered physical injury in the accident and six months after the termination of the disability caused by that injury as found by the trial court. There is no evidence that Dr. Cline had ever seen petitioner or talked to anyone about him prior to that time, and it appears that he knew nothing about petitioner except what he found in his examination and what petitioner may have told him.) He examined petitioner and found no evidence of nerve disorder or injury either in the right arm or in the left foot, and found no indication of disability relating to the right arm and no indication of any disability to the left foot, ankle or leg. He did find, however, during an examination of more than an hour, that there was a zone of anesthesia in the sole of his left foot and that the zone shifted. This shifting indicated that the anesthesia was not due to organic nerve disorder, but that it was of mental origin and a hysterical condition, and it indicated also that petitioner was a mentally unstable person, slightly below the average of intelligence. The doctor testified that petitioner was unable to perform his ordinary tasks, not for reasons of organic injury, but because of his mental state, saying that he was so convinced that he was sick that the result was the same. He testified further that a person of the lower level of intelligence is more apt to be unstable mentally and suggestible, and more apt to develop "this hysterical neurosis."

After having testified that petitioner told him of the physical injuries he had suffered in December, 1945, of a trip he took to San Antonio in January, 1946, and of a doctor telling him there that he was going to be disabled at least six months, Dr. Cline testified, in answer to the question when in his opinion the neurosis asserted itself: "I couldn't be sure, *but I gather that it was several weeks afterwards when he went to San Antonio"; that he thought "it inspired the neurosis";* and that *"the suggestible became evident."* Again when his attention was directed to the suggestion made by the doctor in San Antonio, Dr. Cline testified that he "gave that as having considerable weight," *that he believed the suggestion was the basis of the neurosis,* saying further: "I mean the suggestion was imprinted from the outside; he was ready for such a suggestion and responded to it." He testified that petitioner was a neurotic individual, more susceptible to suggestion than the average person. In answer to the question, "What is the neurosis a manifestation of," he answered, "Well, neurosis is a condition

which exists because of the things we mentioned, mental instability."

When the doctor's attention was again called to his testimony that the suggestion made to petitioner by the doctor in San Antonio was the cause of his neurosis, he testified that he did not know whether or not petitioner's response came from that suggestion, and that he did not give it very much value. He added that the result could have been obtained by a suggestion from another source or that it would be the same without direct suggestion "because it is an unconscious manifestation, unconscious origin." He had testified immediately proceeding these statements that he did not believe the suggestion of the San Antonio doctor "primarily caused all this thing," that "everything was ready for this neurotic disability to develop; it was one which only started the development," and that petitioner "was more susceptible to suggestion than the average person." Dr. Cline testified in answer to the question whether he thought there was any connection between petitioner's injury and the neurosis: "The simplest inference is that the neurosis arises from the injury," and he added that it "naturally flows from the injury." He also testified that he did not know how long petitioner had been in "the condition," but that "I judge that he had had it since the injury."

As to the duration and termination of petitioner's neurosis, Dr. Cline spoke positively a number of times. When asked whether the neurosis lasts until cured by suggestion or some other treatment, the doctor answered that it would, "or until the stress is removed or until the disability has accomplished its purpose." His attention was called to the pendency of the claim for compensation, and he answered: "He is accelerating his disability for a purpose. *I think that he will recover quite promptly when a settlement is made. * * * * I* don't mean he is consciously malingering; he is unconsciously doing it, but the result is the same." Asked to assume that the suit would not be terminated within three or four years, or never terminated, and to express an opinion as to when petitioner would recover from the neurosis, Dr. Cline answered: "I would expect him to continue to be disabled under those conditions as far as work is concerned." In answer to the question whether he would prescribe a settlement of the case as a cure for petitioner, Dr. Cline said he believed he would, and added: *"Litigation is a stronger suggestion than anything I could provide,* than anything that could be provided to offset it; possibility to be gained is a very strong thing." He had already testified that he be-

lieved petitioner would be benefitted by suggestive treatment, as by telling him that his leg was all right, adding in that connection: "However, in these cases where there is a reactive suggestion, it probably isn't of great value; it isn't as suitable there as where there is no such." Dr. Cline answered "yes" to this question: "This man, you stated in the early part of your testimony, when the cause for his manifestation is removed, inducements gone, would probably recover quickly?" Again he testified that *he thought petitioner's recovery would be prompt after settlement.* Finally, in answer to the suggestion by the trial judge that he had been vague about how long it might be that petitioner's neurosis would be gone after the conclusion of the case, the doctor testified that he "would say within six months he will be perfectly all right."

In my opinion there is no other reasonable construction or interpretation of Dr. Cline's testimony as to the cause of petitioner's neurosis than that in his opinion it had its beginning and its source in suggestion and particularly the suggestion of greater or continued compensation if disability continued. According to the doctor's testimony petitioner is a neurotic person of mental instability and therefore more susceptible to suggestion than the average person. He expressed the positive opinion that a doctor's suggestion made to petitioner in San Antonio some time after the accident, that he would be disabled for at least six months, inspired the neurosis, and he said that he gave considerable weight to it and that he believed the suggestion was the basis of the neurosis. Later in his testimony he did make the further statement, stressed in the majority opinion, that he did not give much value to the suggestion of the San Antonio doctor, but he added immediately that the same result could have been obtained by a suggestion from some other source, showing he was still convinced that suggestion was the basis or source of petitioner's neurosis. And through all of his testimony suggestion is emphasized as the source or cause of the neurosis in a person of mental instability.

The majority opinion accepts as some evidence to support a finding that the neurosis was the result of the physical injury a statement of Dr. Cline that the simplest inference is that neurosis arises from the injury, and that it flows from the injury, but when this statement is read in its context and in the light of the fact that Dr. Cline did not see petitioner until seven months after the accident and six months after all disability from the physical injury had ceased, and could not know when or how the neurosis first developed or manifested itself, it is

apparent that he was not in this statement expressing his opinion that the petitioner's neurosis had its origin in the physical harm. He was expressing merely the opinion that the simplest explanation of the cause of neurosis is that it arises from injury or flows from injury. It is true of course that petitioner's neurosis may be traced back to the accident and the physical harm that he suffered in it, for had there been no accident and no physical harm he would have had no claim and no suit. Thus the accident and the physical harm may be said to have been the remote cause of the neurosis, but this does not mean that the neurosis naturally and directly resulted from the physical harm.

An Arizona case, Phelps Dodge Corporation v. Industrial Commission, 46 Ariz. 162, 49 Pac. (2d) 391, is in many respects like this case. Compensation was claimed for disability caused by neurosis. The court held that neurosis is a disease, but the plain language of the statute made it imperative that disease, to be compensable, be the result of an injury. Although the commission found that the claimant was disabled by reason of neurosis traceable in part to circumstances arising out of and immediately following his injury, it was held that, because there there was no finding by the commission that the neurosis was the result of the injury, the claimant must necessarily fail. It is true that in the instant case we have a finding of the trial court that petitioner developed neurosis as a result of the injury to his foot and elbow, but that finding, in our opinion, for the reasons given above, is without support in the evidence.

One of two things is true: either Dr. Cline's testimony is correctly construed to mean that in his opinion petitioner's neurosis was cused by the suggestion made by the San Antonio doctor, or by some other suggestion as to continued disability and compensation; or if it means that he expressed the opinion also that the neurosis arose from the injury, his opinion as to the cause of the neurosis should be rejected for want of probative value, being contradictory in itself and pure speculation without knowledge of facts upon which it could be based.

As to the character of petitioner's neurosis, the opinion expressed by Dr. Cline is positive and without qualification. He testified that his neurosis was a condition that existed because of mental instability; that petitioner was more susceptible to suggestion than the average person, and that everything was ready for this neurotic disability to develop. All of his testimony reflects his opinion that it was suggestion that caused petitioner's neurosis to develop and to persist. He said he would

prescribe a settlement of the case as a cure for petitioner, adding that litigation was a stronger suggestion than anything he could provide. Several times he expressed the opinion without qauification that petitioner would promptly recover after settlement of the claim or suit. He even testified that if the suit should not be terminated within three or four years or never terminated he would expect petitioner to continue to be disabled. This testimony cannot be brushed aside by the statement that settlement of the claim is merely another prescription for petitioner's neurosis. It positively characterizes the neurosis and the disability, which was its symptoms, as continuing only by reason of the pendency of the claim and desire for compensation. It thoroughly supports and justifies the reasonable conclusion expressed by the Court of Civil Appeals that disability purely neurotic in nature, the continued duration of which is solely caused by the existence of a claim under the Workmen's Compensation Act, is not compensable.

The majority opinion argues that petitoneir's neurotic incapacity was not simulated and was very real. But how could it be real when, as shown by Dr. Cline's testimony, it was purely mental and would continue and would end only by the force of the claim for compensation? And how could it be real and compensable when, as Dr. Cline testified, petitioner was not consciously malingering, but was unconsciously doing it, with what the doctor said was the same result? I am firmly convinced that no other reasonable conclusion can be reached from a careful reading of all of Dr. Cline's testimony than that petitioner's neuerosis is not of sufficient substance and genuineness to be denominated a disease, and that the disability that is caused by it, or is a symptom of it, should not be and is not compensable.

Attention should be called to the fact that this case as decided by the trial court and by the majority of this Court lends encouragement to delay. The trial of the case was concluded on September 21, 1946, except for a deposition, having no bearing on the question under discussion, which had not been returned. On November 8, 1946, the deposition was returned and read to the court. The court rendered its judgment on November 25, 1946, awarding compensation to petitioner for total disability to the date of the rendition of judgment; and by reason of that delay compensation for an additional total disability of 65 days was awarded to petitioner.

538

The judgment of the Court of Civil Appeals should be affirmed.

Opinion delivered February 11, 1948.

Justices Brewster and Folley join in this dissent.