836 P.2d 464

**CONNER MANUFACTURING, INC.,**
**Petitioner Employer,**

**Aetna Insurance Company,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION**
**OF ARIZONA, Respondent,**

**Peggy Paniczko, Respondent Employee.**

**No. 1 CA–IC 91–0103.**

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 18, 1992.

Long, Lester & Lundmark, P.A. by James B. Long, Melinda Poppe, Phoenix, for petitioner Employer and petitioner Carrier.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Ely, Bettini, Ulman, Insana & Turley by Joseph M. Bettini, Toby Zimbalist, Phoenix, for respondent Employee.

## OPINION

CONTRERAS, Presiding Judge.

This is a special action review of an Industrial Commission award for an unscheduled permanent partial disability. The Administrative Law Judge unscheduled the disability because, in addition to an undisputed total physical impairment of the left leg, Respondent Employee ("Claimant") also suffers from a permanent psychiatric impairment. The issues raised on review concern whether Claimant had to prove that this psychiatric impairment was disabling, and, if so, whether this required proof that the psychiatric impairment increased the disability otherwise resulting from the left leg impairment. We conclude that proof of the psychiatric impairment alone is sufficient under *Dye v. Industrial Commission,* 153 Ariz. 292, 736 P.2d 376 (1987), and accordingly affirm the award for this reason alone.

In April, 1982, Claimant fractured her left ankle in a fall from a ladder at work. The fracture did not heal properly, and multiple surgeries were required. Complications culminated in a below the knee amputation of the left leg in April, 1986. Claimant has received psychiatric care for

chronic pain and depression since late December, 1985.

In February, 1987, Petitioner Carrier ("Aetna") reclosed the claim with a total left leg impairment and supportive medical care. In July, 1988, however, it again reopened the claim for additional surgery to treat stump neuromas. In January, 1990, Aetna reclosed the claim with the same permanent impairment and supportive care. Claimant timely protested, alleging, among other things, that she also had a permanent psychiatric impairment.

At the ensuing hearings, Claimant, her treating psychiatrist, Thomas N. Thomas, M.D., and Eugene R. Almer, M.D., a psychiatrist who examined Claimant at Aetna's request, appeared. Claimant testified that her current symptoms included phantom left leg pain and depression. She described herself as "moody and I just—well, it is like I can just sit there and cry over nothing really. Just sit down and start crying and just wishing I could do things that I didn't [sic] do before." Claimant testified that she attends group therapy with Dr. Thomas once a week and takes prescribed anti-depressive medication. She acknowledged that her therapy has addressed personal problems, which most recently included her reaction to the terminal illness of her husband.

Dr. Thomas testified that he had treated Claimant for chronic pain related to her leg condition and for depression related in part to this chronic pain. According to Dr. Thomas, pain and depression interact and intensify one another. He also testified that phantom pain is a physiologic, not a psychiatric, phenomenon. Dr. Thomas described Claimant as having been suicidal at times, but he conceded that therapy had helped her and that she no longer is suicidal. He also acknowledged that therapy recently had addressed Claimant's husband's illness and death, and he did not yet consider Claimant to be stationary.

Dr. Thomas classified the depression as a major affective disorder as opposed to a less severe dysthymic disorder. In his opinion, this psychiatric condition impaired Claimant's functioning as a whole person and her ability to obtain and hold a job in a competitive setting. He conceded, however, that this impairment did not prevent Claimant "from performing any work which she would otherwise be able to do given her physically disabled state."

Dr. Almer agreed that Claimant was depressed, but he diagnosed a dysthymic disorder related to phantom pain, arthritis, and menopause. He also diagnosed an adjustment reaction related to Claimant's husband's terminal illness. In his opinion, although the dysthymic disorder probably was permanent because its causes were unlikely to change, this condition by definition is not disabling and is not rateable under the AMA Guides. He recommended continuation of medication and supportive group therapy.

The Administrative Law Judge subsequently issued an award for an unscheduled permanent partial disability. He found that the psychiatric experts disagreed as to whether Claimant's depression is impairing and resolved that conflict in favor of Dr. Thomas' opinion that it is an impairment, specifically finding that claimant "has a permanent impairing psychiatric condition causally related to the industrial accident which is to be treated as a permanent partial unscheduled disability." The Administrative Law Judge affirmed this award on administrative review. Aetna then brought this special action.

Aetna asserts that Dr. Thomas' testimony that Claimant's affective disorder is impairing is legally insufficient to support the award for an unscheduled disability. Aetna argues that to unschedule the left leg disability, Claimant had to prove that her psychiatric impairment is disabling. To satisfy this burden, the argument continues, Claimant had to prove that the psychiatric impairment increased the disability otherwise resulting from the left leg impairment alone. Because Dr. Thomas agreed with Dr. Almer that Claimant's psychiatric condition did not increase her disability, Aetna contends that Claimant failed to sustain her burden of proof.

Aetna relies on several older Arizona Supreme Court cases that unquestionably de-

nied compensation because the claimants failed to prove that their mental conditions were disabling. *See, e.g., Potter v. Industrial Comm'n,* 99 Ariz. 126, 130, 407 P.2d 88, 90 (1965); *Koch v. Industrial Comm'n,* 70 Ariz. 283, 287, 219 P.2d 773, 775 (1950); *Phelps Dodge Corp. v. Industrial Comm'n,* 46 Ariz. 162, 167, 49 P.2d 391, 392 (1935). In each of these cases, however, although the original industrial injury was physical, the sole residual effect was mental. These cited cases, therefore, do not address unscheduling of an otherwise scheduled physical disability, but rather merely extend to mental conditions the general rule that injured workers receive compensation only for the disability resulting from the injury. *E.g., Phelps Dodge Corp.,* 46 Ariz. at 167, 49 P.2d at 392 ("The different provisions of the Compensation Law fix compensation for disability resulting from injury.... Mental or physical suffering which does not lessen the employee's ability to work and earn wages is not compensable, the theory and idea of the law being to remunerate or compensate the employee to the extent of disablement by reason of his injury.").

Although the cited authority falls short of supporting Aetna's argument, the argument is logical. The general rationale for unscheduling otherwise scheduled disabilities is that the whole may exceed the sum of the parts—that is, the cumulative effect of multiple disabilities is potentially greater than the simple total of the disabilities added together.[1]

The Arizona Supreme Court case law, however, has not followed this logic. Even in cases requiring proof of actual disability,[2] the supreme court has never required proof of an increased disability over the disability resulting from the otherwise scheduled impairment alone. Rather, the court has defined "disability" broadly to mean "impairment of earning power generally." *Alsbrooks v. Industrial Comm'n,* 118 Ariz. 480, 484, 578 P.2d 159, 163 (1978) (quoting *Savich v. Industrial Comm'n,* 39 Ariz. 266, 270, 5 P.2d 779, 780 (1931)). Moreover, the supreme court has now held that an injured worker need not satisfy even this broad test of disability to unschedule an impairment if the residual effects of an injury extend beyond the scheduled impairment. *See Dye v. Industrial Comm'n,* 153 P.2d 292, 736 P.2d 376 (1987). Rather, the court concluded that "[p]ain, swelling, or any other impairment to an unscheduled portion of the body, *if it affects function at all,* transforms a scheduled injury into an unscheduled injury." *Id.* at 294, 736 P.2d at 378 (emphasis added).

The present case, of course, involves a mental rather than a physical impairment beyond the scheduled leg impairment. Aetna correctly notes that the legislature has distinguished mental from physical conditions in A.R.S. § 23–1043.01(B). But the statutory distinction concerns legal and medical causation. *See generally Toto v. Industrial Comm'n,* 144 Ariz. 508, 512–14, 698 P.2d 753, 757–59 (App.1985); *DeSchaaf*

---

1. The Workers' Compensation Act divides permanent disabilities into two broad categories: those compensated under a fixed schedule (scheduled disabilities) and those compensated according to actual loss of earning capacity (unscheduled disabilities). *Compare* Ariz.Rev.Stat. Ann. ("A.R.S.") § 23–1044(B) *with* § 23–1044(C) *and* § 23–1045. A disability otherwise within the schedule may nevertheless be treated as unscheduled if the injured worker had a previous disability, *see generally* A.R.S. § 23–1044(E), if an industrial injury causes multiple scheduled injuries, *see, e.g., Ossic v. Verde Central Mines,* 46 Ariz. 176, 189, 49 P.2d 396, 402 (1935), or if the residual effect of an industrial injury extends beyond the scheduled impairment, *see generally* 2 Arthur Larson, *The Law of Workmen's Compensation,* §§ 58.20 to .25 (1992). According to Larson, Arizona uniquely extends the statutory presumption of disability for work-related scheduled impairments to successive injuries. *See id.* § 58.24 at 10–492.243 to .248.

2. In many cases, proof of actual disability is obviated by various presumptions. *See, e.g., Pullins v. Industrial Comm'n,* 132 Ariz. 292, 295, 645 P.2d 807, 810 (1982) (conclusive presumption of disability based on severity of preexisting impairment); *Ronquillo v. Industrial Comm'n,* 107 Ariz. 542, 544, 490 P.2d 423, 425 (1971) (irrebuttable presumption of disability if preexisting impairment work-related and within schedule; rebuttable presumption if preexisting impairment not work-related but would have been scheduled if it had been work-related). *But cf. Alva v. Industrial Comm'n,* 156 Ariz. 85, 86–87, 750 P.2d 28, 29–30 (1988) (non-industrial loss of part of little finger so trivial that rebuttable presumption of disability inapplicable).

**254**

*v. Industrial Comm'n*, 141 Ariz. 318, 320–21, 686 P.2d 1288, 1290–91 (App.1984). In the present case, Aetna has properly conceded medical causation. Given this causal connection between Claimant's amputation and her depression, we see no principled justification for distinguishing *Dye*. *See* 2 Arthur Larson, *supra*, § 58.21.

The Administrative Law Judge therefore correctly concluded that Dr. Thomas' testimony that Claimant suffered a permanent psychiatric impairment supported an unscheduled disability. We accordingly affirm the award.

GARBARINO, J., and MICHAEL J. O'MELIA, Superior Court Judge, concur.

Note: The Honorable MICHAEL J. O'MELIA, Judge of the Maricopa County Superior Court, was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Article VI, section 3, of the Arizona Constitution.