63 P.3d 298

**Larry YOUNG, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Peach Springs Unified School District 8, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 02–0072.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 11, 2003.

As Amended Feb. 25, 2003.

Review Denied June 30, 2003.

Robert E. Wisniewski, P.C. By Robert E. Wisniewski, Phoenix, Attorney for Petitioner.

Laura L. McGrory, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

James F. Crane, Chief Counsel, State Compensation Fund By Mark A. Kendall, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

WINTHROP, Judge.

¶1 We must decide in this special action whether the administrative law judge ("ALJ") erred by awarding scheduled bene-

fits for petitioner Larry Young's Arizona industrial injury.[1] Petitioner contends that his injury should be unscheduled because of two prior out-of-state industrial awards. For the reasons that follow, we hold that if a prior out-of-state industrial injury resulted in an award that would have been scheduled had it occurred in Arizona, a loss of earning capacity for such injury is conclusively presumed, and a subsequent Arizona scheduled industrial injury becomes unscheduled for purposes of calculating permanent disability benefits.

### Factual and Procedural History

### 1. The Arizona Injury

¶ 2 Petitioner injured his left knee in the course and scope of his employment with respondent Peach Springs Unified School District 8 on August 15, 2000. Respondent carrier, the State Compensation Fund, accepted the claim and authorized benefits. Petitioner stopped working on the afternoon of August 16, 2000, and did not return.

¶ 3 In March 2001, petitioner sought medical treatment for his right knee, stating that it had become painful and swollen because he had been placing all of his weight on his right leg after he injured his left knee. The carrier denied treatment for the right knee, and the matter was referred for a hearing pursuant to Arizona Revised Statutes ("A.R.S.") section 23–1061(J).

¶ 4 In July 2001, a month before the hearing on benefits for the right knee, the carrier closed the left knee claim with permanent impairment and a scheduled award for 3% functional loss of the left leg. Petitioner protested the closure, contending that his condition was not stationary and that his injury should be unscheduled. The Industrial Commission of Arizona consolidated these issues with the upcoming hearing on medical benefits for the right knee.

### 2. The Hearing

¶ 5 On the first day of hearing, Petitioner's counsel agreed that the left knee was stationary, which narrowed the issues to: (1) treatment for the right knee, which depended on whether the right knee was related to the Arizona injury or its sequelae, (2) degree of left leg impairment, and (3) whether the Arizona injury should be unscheduled.

¶ 6 The parties agreed that if the ALJ found the right knee claim to be connected to the left knee injury then the right and left knee impairments together would unschedule the Arizona injury. Petitioner also argued that the existence of two prior California industrial injuries would also unschedule the Arizona injury. Although the parties decided to address first the causal relationship between the right knee and the Arizona injury, petitioner was permitted to testify on all issues, including the California injuries.

¶ 7 Petitioner testified that he worked for the California Highway Patrol from 1967 until 1981, when he retired for medical reasons. In the course of his employment as a patrolman, petitioner sustained injuries to his back and elbow, resulting in separate California Workers' Compensation Appeals Board awards dated August 5, 1982. The California awards, which were entered into evidence, specified a 21% permanent disability to petitioner's back, and a 4% permanent disability to his elbow. The awards compensated petitioner for both injuries and provided continuing medical benefits for his back.

### 3. Post–Hearing Memoranda

¶ 8 After the testimony of petitioner and three physicians, the hearing closed on December 3, 2001. By letter dated December 5, 2001, petitioner's counsel argued that if the ALJ denied medical benefits for the right knee, the Arizona injury should be unscheduled because of the California injuries. Specifically, one of the California injuries was scheduled, one was unscheduled, and petitioner's own testimony established that his California back injury resulted in a loss of earning capacity.

---

**1.** Arizona's workers' compensation law divides permanent disabilities into two broad categories: those identified and compensated under a fixed schedule ("scheduled" disabilities), and those compensated according to actual loss of earning capacity ("unscheduled" disabilities). *Conner Mfg., Inc. v. Indus. Com'n.*, 172 Ariz. 251, 253, n. 1, 836 P.2d 464, 466, n. 1 (App.1992), *citing* A.R.S. § 23–1044(B), (C) (1995).

¶ 9 By letter dated January 25, 2002, the ALJ asked for the respondents' position on petitioner's "unscheduling theories." By letter dated January 31, 2002, respondents argued that Arizona case law mandates that the California injuries would not unschedule the Arizona injury because petitioner failed to show that the California injuries resulted in a loss of earning capacity.

### 4. Award and Decision Upon Review

¶ 10 The ALJ's written award found petitioner's left knee stationary with a scheduled 3% permanent partial impairment, found the right knee not causally related to the Arizona injury or its sequelae, and did not mention the California injuries.

¶ 11 Petitioner requested review and argued, *inter alia*, that the Arizona injury should be unscheduled because of the California injuries, and that the award was deficient without a specific finding on the California injuries.[2] Respondents argued that the ALJ should affirm his award, but add a specific finding that the California injuries did not unschedule the Arizona injury.

¶ 12 The ALJ's June 19, 2002 decision upon review did just that, by adding the following paragraph to the original award, which otherwise remained unchanged: "Applicant's disability should not be unscheduled, based upon his prior California injuries. Applicant did not meet his burden of proof to demonstrate that his prior disabilities resulted in a loss of, or a decrease in earning capacity at the time of his August 15, 2002[sic] injury."

¶ 13 This timely special action followed, and this court has jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(2) (1992), 23–951(A) (1995), and Rule 10, Arizona Rules of Procedure for Special Actions (1997).

### Standard of Review

¶ 14 This court deferentially reviews factual findings of the ALJ, but independently reviews any legal conclusions.

*See, e.g., PFS v. Indus. Com'n.,* 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997). Evaluation of a permanent disability is a question of law. *Alsbrooks v. Indus. Com'n.,* 118 Ariz. 480, 482, 578 P.2d 159, 161 (1978). We construe the workers' compensation law liberally so as to effectuate its remedial purpose. *Stainless Specialty Mfg. Co. v. Indus. Com'n.,* 144 Ariz. 12, 16, 695 P.2d 261, 265 (1985).

### Analysis

¶ 15 The sole issue on appeal is whether the Arizona injury should be unscheduled because of either or both of the California injuries. As explained below, the Arizona injury should be unscheduled because of the California elbow injury; accordingly, the award and decision upon review must be set aside.

### 1. Disability Classifications

¶ 16 Had it occurred in Arizona, petitioner's California elbow injury would have been considered a scheduled injury. Permanent disability to an arm is listed among those injuries for which permanent disability benefits are specifically provided. *See* A.R.S. § 23–1044(B)(21). In contrast, petitioner's back injury would have been unscheduled because it is not among the scheduled injuries enumerated in the statute. A.R.S. § 23–1044(B) and (C).

¶ 17 Standing alone, the Arizona injury which resulted in a 3% permanent partial impairment to petitioner's left leg is a scheduled disability. A.R.S. § 23–1044(B)(21). However, a disabling injury that would ordinarily be scheduled becomes unscheduled if the worker already suffers from a permanent earning capacity disability. *PFS,* 191 Ariz. at 276, 955 P.2d at 32, *citing Ronquillo v. Indus. Com'n.,* 107 Ariz. 542, 543–44, 490 P.2d 423, 424–25 (1971).

¶ 18 Petitioner has the burden to prove loss of earning capacity. *Fremont Indem. Co. v. Industrial Com'n.,* 144 Ariz.

---

**2.** The request for review also argued that the medical testimony supported a finding that the right knee was causally related to the Arizona injury and its sequelae, that the left leg sustained a greater impairment that precluded petitioner from working, and that a degenerative condition also warranted unscheduling. We will not address these issues, as they have not been raised on appeal.

339, 342, 697 P.2d 1089, 1092 (1985). If a prior industrial injury is scheduled, loss of earning capacity is *conclusively* presumed. *PFS*, 191 Ariz. at 277, 955 P.2d at 33 *(citing Ronquillo,* 107 Ariz. 542, at 544, 490 P.2d 423, at 425).

¶ 19 In contrast, only a *rebuttable* presumption of loss of earning capacity arises if (1) a prior Arizona industrial injury is unscheduled, (2) a prior out-of-state industrial injury results in a scheduled award in the forum state, but would have been unscheduled under Arizona law, or (3) a prior out-of-state industrial injury is not the subject of a final judgment or award in the forum state, but would have been scheduled had it occurred in Arizona. *Fremont,* 144 Ariz. at 342, 345, 697 P.2d at 1092, 1095; *PFS,* 191 Ariz. at 278, 955 P.2d at 34. In each of these situations, the worker must show that, at the time of the subsequent injury, the prior injury resulted in an earning capacity disability. *Id.*

¶ 20 Applying these principles, the ALJ correctly used the rebuttable presumption for the California back injury by requiring petitioner to demonstrate that it resulted in a decrease in earning capacity at the time of the Arizona injury. However, because the award must be set aside due to the California elbow injury, we need not examine the ALJ's finding that petitioner had not met his burden to show that the California back injury constituted an earning capacity disability.

## 2. The California Elbow Injury

¶ 21 The California elbow injury requires us to decide whether a prior out-of-state industrial injury resulting in an out-of-state award that would have been scheduled in Arizona warrants a conclusive presumption of loss of earning capacity, which, in turn, would unschedule the Arizona injury. We conclude that it does. Our decision today, while not squarely addressed in any case brought to our attention, constitutes the next logical step of the analysis in *Fremont* and *PFS.*

¶ 22 The employee in *Fremont* suffered an industrial injury to his back in New Jersey, resulting in an award that contained a finding of 11% permanent partial disability. 144 Ariz. at 341, 697 P.2d at 1091. Our supreme court explained that the principle of comity required Arizona to recognize the "fact and degree" of the disability as articulated in the New Jersey award, but that Arizona law dictates whether the injury is considered scheduled or unscheduled. *Id.* at 345, 697 P.2d at 1095. Because the New Jersey back injury was unscheduled under Arizona law, the employee was required to show that such injury resulted in a loss of earning capacity. *Id.* The opinion did not discuss what the result would have been had the New Jersey injury been of the nature that would have been scheduled in Arizona such as an injury to an arm or leg.

¶ 23 In *PFS,* the employee had previously suffered an industrial injury to his knee in Oregon, but there was no evidence of an Oregon award determining the fact or degree of disability. 191 Ariz. at 276, 955 P.2d at 32. The issue of comity never arose due to the absence of an out-of-state award, and this court proceeded to analyze the out-of-state industrial injury as a non-industrial injury. *Id.* at 278, 955 P.2d at 34. Prior non-industrial injuries, except those of great magnitude that would have been scheduled under Arizona law had they been industrial, are rebuttably presumed to have caused a permanent loss of earning capacity. *Alsbrooks,* 118 Ariz. at 483, 578 P.2d at 162; *Pullins v. Indus. Com'n.,* 132 Ariz. 292, 295, 645 P.2d 807, 810 (1982). Accordingly, this court in *PFS* applied a rebuttable presumption to an out-of-state injury that would have been scheduled in Arizona but did not result in a proven out-of-state award. 191 Ariz. at 278, 955 P.2d at 34.

¶ 24 *PFS* leads us to the conclusion that an out-of-state award that would be scheduled in Arizona gives rise to a conclusive presumption of an earning capacity disability:

At first glance, the issue before us might seem resolvable by obverting *Fremont's* holding. Because *Fremont* treats a prior out-of-state industrial injury that would have been unscheduled in Arizona as if it had been unscheduled and accords it a rebuttable presumption, one might infer that we should treat a prior out-of-state

industrial injury that would have been scheduled in Arizona as if it had been scheduled and accord it a conclusive presumption. A missing element, however, prevents the application of this logic.

A central element of *Fremont* was comity—the deference courts of one state owe to final judicial decisions of another. 144 Ariz. at 345, 697 P.2d at 1095. Our supreme court attempted in *Fremont* on the one hand to honor the principle of comity and, on the other, to accept Arizona's designation, rather than another state's potentially different designation, of the kinds of injuries that warrant scheduled compensation. The way to accommodate both considerations, according to *Fremont,* is to accord comity to the other state's determination of 'the fact and degree of a prior disability,' but to determine the scheduled or unscheduled nature of that disability by reference to Arizona law. *Id.*

Reading *Fremont* in this fashion reveals the missing element in this case. Here, because the fact and degree of prior disability were *not* determined by an out-of-state award, the occasion for comity does not arise.

191 Ariz. at 277–278, 955 P.2d at 33–34. In this case, the element that was "missing" in *PFS*—an out-of-state award for an injury that would have been scheduled in Arizona— is present. Thus, petitioner's California elbow injury enables us to take the *Fremont* and *PFS* analysis to its next logical step, and conclude that an out-of-state award that would have been scheduled in Arizona gives rise to a conclusive presumption of an earning capacity disability.

¶ 25 This result is entirely consistent with the longstanding precedent articulated by our supreme court in *Ronquillo*—that "where there is a prior scheduled industrially related injury, the Commission may not ignore the previous injury when the workman suffers a second industrial injury." 107 Ariz. at 544, 490 P.2d at 425 (concluding that a second industrial injury should be unscheduled in light of a prior scheduled industrial injury). We decline respondents' implicit invitation to interpret and limit *Ronquillo* sole-

ly to prior Arizona scheduled industrial injuries.

### Conclusion

¶ 26 We hold that if a prior out-of-state industrial injury resulted in an award, and if that injury would have been a scheduled award had it occurred in Arizona, resulting earning capacity disability is conclusively presumed. The ALJ erred by applying a rebuttable presumption to petitioner's California elbow injury. Because this error was dispositive, we set aside the award and decision upon review.

CONCURRING: JAMES B. SULT, Presiding Judge and PATRICK IRVINE, Judge.