**A.W. PIERCE, III, Appellant,**

v.

**Marilynn PIERCE, Appellee.**

**No. 2–83–101–CV.**

Court of Appeals of Texas,
Fort Worth.

March 15, 1984.

Rehearing Denied April 12, 1984.

Quisenberry & Spurlock, Carl G. Quisenberry and Jimmy M. Negem, Fort Worth, for appellant.

Alley & Alley, Richard Alley, Fort Worth, for appellee.

Before HUGHES, ASHWORTH and HILL, JJ.

## OPINION

HUGHES, Justice.

A.W. Pierce, III, has appealed the judgment of the trial court which dissolved the marriage of he and Marilynn Pierce, provided for conservatorship and visitation rights among the parties, set child support, divided the parties' community property and awarded attorney fees for Mrs. Pierce's attorney against Mr. Pierce. Mr. Pierce has appealed only as to the amount the court set as child support, the division of the community property and the award of the attorney's fees.

Trial was to the court and a finding of fact and conclusion of law was filed by the judge at the request of Mr. Pierce. Material to this appeal is the order of the court setting $900.00 a month child support and its finding as to the valuation of the couple's community property as follows:

1. Shaw Brothers Welding, a sole proprietorship valued at $161,000.00 minus indebtedness of $11,000.00.

2. Lot and building housing Shaw Brothers Welding—$50,000.00.

3. Homestead of the couple—$40,000.00.

4. Syntex, Inc., a Texas corporation valued at $20,000.00.

The parties were married for 14 years and have two minor children, a son age 10 and a daughter age 8. During the marriage they acquired a business known as Shaw Brothers Welding Company, a going concern with a good reputation in the community for its welding service. The testimony further reflects that Mr. Pierce continued to operate Shaw Brothers in such a way that its reputation for good service was upheld. Indeed, under Mr. Pierce's management, the business grew and prospered so that in 1981, its net income before taxes was in excess of $60,000.00. Net income from such business in 1982 was in excess of $33,000.00.

In addition to the Shaw Brothers operation, Mr. Pierce became involved in a loose partnership-turned corporation which he named Syntex, Inc., a company involved in buying and selling used oil well sucker rods. According to Mr. Pierce, the main advantage to the Pierce's of the Syntex operation was that Mr. Pierce got the use of a $390.00 a month Lincoln town car leased in the business.

Testimony shows that Mrs. Pierce before her marriage was a secretary and could probably earn about $1,000.00 a month in such occupation. She testified that she needed $2,700.00 a month for the support of herself and her children in the style to which they had become accustomed. Mr. Pierce testified that business had fallen off since 1981 and cited the much lower tax liability of 1982 to support his contention.

Testimony reflected that the Pierce's owed $8,600.00 on their home, $11,000.00 on Shaw Brothers Welding, $31,000.00 against the Shaw Brothers lot and building and a $17,000.00 debt against unimproved acreage in Saginaw.

Inventories submitted by Mr. and Mrs. Pierce, separately, reflect some difference of opinion as to value listed as follows:

| | His Valuation | Her Valuation |
|---|---|---|
| Homeplace | $ 46,400.00 | $ 40,000.00 |
| Unimproved Acreage | 26,260.00 | 26,000.00 |
| Shaw Brothers Lot and Building | 39,800.00 | 78,700.00 |
| Shaw Brothers Welding Business | 48,000.00 | 200,000.00 |
| Syntex, Inc. | –0– | 20,000.00 |
| Household Furnishings | 15,000.00 | 3,000.00 |
| Mrs. Pierce's Automobile | 6,000.00 | 3,000.00 |
| Mr. Pierce's Boat | 3,000.00 | 3,000.00 |

It can readily be seen that there is a wide difference of opinion as to what the business and the business property are worth. Trial court found that the business and business property was worth $200,000.00 and awarded it to Mr. Pierce, then ordered that Mr. Pierce give Mrs. Pierce a note in the amount of $100,000.00 to bear interest at 10% per annum and to be paid out by Mr. Pierce monthly at whatever amount that computed. There is testimony from Sam McCall, an appraiser, that the realty and buildings of Shaw Brothers Welding were worth $110,700.00.

As to Syntex, Inc. stock, testimony of Mrs. Pierce set it at $20,000.00 and Mr. David Morrow, a CPA, appraised it at $36,-000.00. Mr. Pierce set its value at zero.

█ We hold that the trial court had sufficient evidence to find the values of the community property of the parties as it found and that the finding was not against the great weight and preponderance of the evidence. We overrule point of error number three.

Also we hold the trial court had sufficient evidence to divide the property as it did and we overrule point of error number two.

█ Point of error number four complains of trial court's awarding $12,000.00 in attorneys' fees for Mrs. Pierce against Mr. Pierce. We are required to presume that the trial court did not overstep its discretion in such an award. *Leal v. Leal*, 628 S.W.2d 168 (Tex.App.—San Antonio 1982, no writ). The evidence to support the award was sufficient and was not controverted. We overrule the fourth point of error.

█ As to point of error number five in which Mr. Pierce asserts error by the trial court in dividing the property so as to deny him the means to earn a livelihood, in short, the complaint is that the trial court should not have awarded the $100,000.00 note to Mrs. Pierce for her share in Shaw Brothers Welding and the land and building appurtenant. Mr. Pierce asserts that the note and mortgage renders his borrowing money on the business impossible and prevents his earning a livelihood. The trial court evidently chose not to accept Mr. Pierce's assessment as it had the right to do as trier of the fact in this case. *Smallwood v. Smallwood*, 625 S.W.2d 75 (Tex. App.—Fort Worth 1981); *Hood v. Texas Indemnity Ins. Co.*, 146 Tex. 522, 209 S.W.2d 345 (1948). We overrule point of error number five.

█ In considering point of error one in which Mr. Pierce complains of the $900.00 per month child support payment he was ordered to pay, we have to consider the

conditions at the time of the decree. In so doing, we are unable to say that the trial court erred in light of the evidence before it at that time. Appellant was operating two profitable businesses at the time (although Shaw Brothers profit was down drastically from the previous year and, according to Mr. Pierce, he was not really realizing as much out of the sucker rod corporation as his income tax return reflected). The trial court had the discretion of believing or not believing Mr. Pierce's testimony on these matters and the substantial profit ($10,108.12) on the Syntex Corporation certainly gave the court an adequate credibility consideration. We will not disturb the trial court's ruling since we find no clear abuse of discretion. *Smallwood, supra.* We overrule point of error number one.

 In addition to the appeal of the judgment below we have before us a motion to hold Mr. Pierce in contempt for failure to pay the child support ordered. That Mr. Pierce is in arrears is unquestioned. As of the end of October, 1983, Mr. Pierce had paid $5,950.00 through the registry of the court on the child support, the court's order called for $7,200.00. Mr. Pierce had the burden of showing us good reason for not adjudging him in contempt.

We have before us the statement of facts covering the contempt hearing held before the trial court on our order. There were three witnesses. Mrs. Logan, of the Child Support office, established the arrearage. Mr. Alley, attorney for Mrs. Pierce, testified as to attorneys' fees and Mr. Pierce testified to his inability to pay the full amount of support ordered. Our decision is necessarily based on his testimony, considered only in the black and white of the court reporter's transcript.

Mr. Pierce testified that he was unable to pay all the child support ordered because: "I haven't had the money"; "business fell off"; of personal debts in the amount of $1,872.76; of business debts past due in the sum of $6,294.00; he can't operate business without paying some accounts and utilities; he has to pay interest on notes at Lake Worth Bank ($29,000 principal) and Bank of Commerce ($12,000 principal); he couldn't get loan at Bank of Commerce because of $100,000 encumbrance on business.

He further testified that he had given his interest in the Syntex Corporation to his former partner because it was going to fold if the former partner carried out his promise to quit. The lease of the Lincoln town car he used as a Syntex vehicle was transferred to Shaw Brothers and was now three months in arrears on lease payments at $393.82 per payment. Moreover, Mr. Pierce testified that as of September 30, 1983 Shaw Brothers had lost $4,990 plus. In the light of this testimony, we do not find Mr. Pierce in contempt.

We affirm the judgment of the trial court and decline to hold Mr. Pierce in contempt.