Popescu v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-89-114-CR

        SARA WEBSTER POPESCU,
                                                                              Appellant
        v.

        THE STATE OF TEXAS,
                                                                              Appellee
 

 From the County Court at Law
Fort Bend County, Texas
Trial Court # 34,193
                                                                                                                
                                                                     
OPINION ON REMAND
                                                                                                     

          On May 23, 1991, we reversed Appellant's conviction for driving while intoxicated and
remanded her cause for a new trial. Relying on State v. Carter, 810 S.W.2d 197 (Tex. Crim.
App. 1991), we held that the court should have granted Appellant's motion to quash the indictment
because it failed to allege which type of intoxication the State intended to rely on at trial. In a per
curiam opinion, the Court of Criminal Appeals granted the State's petition for discretionary review
and remanded the cause to us to determine whether the failure to specify which definition of
intoxication the State relied upon "prejudiced the substantial rights of [A]ppellant." 
          Our reliance on Carter was based on the following excerpt: 
[I]n the face of a motion to quash, the information was insufficient under Tex. Const. art.
I, § 10, because it failed to allege which definition(s) of intoxicated and which type(s) of
intoxicant the State would seek to prove at trial. Appellant is entitled to know these basic
allegations so that he may properly prepare his defense.
See id. at 200. 
          We note that the Court of Criminal Appeals in Carter omitted an express finding that
depriving the defendant of constitutionally guaranteed notice of basic allegations necessary to
prepare a defense prejudiced his substantial rights. That finding would seem to be self-evident. 
Nevertheless, we are apparently required to decide whether violating Appellant's constitutional
right to know "these basic allegations so that [she] may properly prepare [her] defense" prejudiced
her substantial rights. See id. We hold that it did. 
          A defendant is entitled to know which definition of intoxication is relied upon so that he
may properly prepare a defense. Id. Here, the indictment failed to give Appellant effective notice
of the behavior which she allegedly engaged in. See id. (citing Daniels v. State, 754 S.W.2d 214,
217 (Tex. Crim. App. 1988)).
          Appellant was deprived of requisite constitutional notice of basic allegations necessary to
properly prepare a defense which, in the context of the case, substantialy impacted on her ability
to properly prepare a defense. See Adams v. State, 707 S.W.2d 900, 903 (Tex. Crim. App.
1986).
          The State contends that Appellant has not shown prejudice because she failed to file a brief
on remand. A brief is not necessary to point out prejudice in this record. Moreover, the State
argues that Appellant was not prejudiced because, even if the court had granted her motion to
quash, the State could have pled disjunctively or conjunctively all manner and means by which she
could have been guilty of driving while intoxicated, thereby depriving her of any more specific
notice than was given under the charging instrument. To accept that argument would, of course,
emasculate Carter, which we refuse to do. 
          Having determined that the defect prejudiced Appellant's substantial right to notice, we
reverse the judgment and remand the cause for a new trial.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice
Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Reversed and remanded
Opinion on remand delivered and filed November 13, 1991
Do not publish



an>      A.  There is no evidence or in the alternative insufficient evidence that the collision
is the proximate cause of part of Appellee's past medical expenses of $20,000.
      B.  There is no evidence or in the alternative insufficient evidence that the collision
is the proximate cause of Appellee's future medical expenses of $31,200.
      C   There is no evidence or in the alternative insufficient evidence that the collision
is the proximate cause of Appellee's past pain and suffering of $85,000 and
Appellee's future pain and suffering of $90,000.
      D.  There is no evidence or in the alternative insufficient evidence that the collision
is the proximate cause of Appellee's past physical impairment of $5,000 and
Appellee's future physical impairment of $19,000.
      E.  The trial court's finding that Appellee suffered actual damages for bodily injury
of $241,200 is grossly excessive.
      In deciding a "no evidence" point, this court must consider only the evidence and inferences
tending to support the finding, viewed most favorably in support of the finding, and disregard all
contrary evidence and inferences. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).
      In deciding a "factual sufficiency" challenge, this court is required to examine all of the
evidence in determining whether the finding is so against the great weight and preponderance of
the evidence as to be manifestly unjust. In re King's Estate, 244 S.W.2d 660 (Tex. 1958).
      An "injury" means damage or harm to the physical structure of the body and such diseases
or infections as naturally result from such damages or harm; includes any incitement,
precipitation, acceleration, or aggravation of any disease, infirmity, or condition, previously or
subsequently existing by reason of such damage or harm; and includes any mental or nervous
disorder that impairs the use or control of the physical structure of the body. Tex. Pattern Jury
Charge Vol. II, 18.01; Tex. Jur. III, Damages, Sec. 109, p. 212, and cases therein cited.
      In a non-jury case the trial judge is the judge of the credibility of the witnesses and the weight
to be given their testimony. Harrell v. Sunnylan Co., 97 S.W.2d 686 (Tex. 1936). Likewise,
where there is conflicting expert testimony, the court in a non-jury case may adopt part or all of
one expert's testimony and reject the other's testimony. The trial court may reject all of an
expert's theories and adopt the theories of non-expert witnesses. Hood v. Western Indemnity Co.,
209 S.W.2d 345, 346 (Tex. 1948).
      Appellee was a woman, 69 years of age, who had a long history of health problems. She was
rear-ended in her vehicle by an 18-wheel truck weighing 20 tons. Her automobile was completely
demolished. Through some miracle she was not killed and had no broken bones. She did have
a severe worsening of all physical complaints that she had before June 11, 1992, (the date she was
smashed into) as well as many new complaints and in the two years between the injury and trial
she had seen eight doctors, had many procedures performed, and had taken some $2,200 in
medicine.
      Affidavits submitted by Appellee complied with the requirements of Section 18.01, Texas
Practice & Remedies Code and, without a controverting affidavit in the record, were sufficient to
prove that the medical expenses recited in those affidavits were sufficient to support the trial
court's finding that the amounts charged were reasonable and that the service was necessary. Six
Flags Over Texas v. Parker, 759 S.W.2d 758, 760 (Tex. App.—Fort Worth 1988, no writ);
Hilliland v. Arnold, 856 S.W.2d 240, 241 (Tex. App.—Texarkana 1993, no writ). These medical
expenses were:
            Falls County Ambulance                                                                     $ 422.75
            Scott and White Hospital                                                                       20,204.13
            Dr. Martin Thornton                                                                                 136.00
            CenTex Gastroenterology                                                                           229.00
            Dr. Robert Veazey                                                                                    179.00
            Dr. Stephen Howlett                                                                                 147.00
            Providence Health Center                                                                        2,337.25
            Brazos Chiropractic Clinic                                                                      5,337.14
            Wal-Mart Pharmacy-Marlin                                                                       672.08
            Wal-Mart Pharmacy-Temple                                                                          5.00
            H.E.B. Pharmacy-Temple                                                                             4.58
            H.E.B. Pharmacy-Waco                                                                            517.49
            Retired Persons Pharmacy                                                                          664.70
            Sanitarium Drugstore                                                                                316.77
            Scott and White Pharmacy                                                                    4.80
$31,179.68

      Dr. Thornton testified that the above medical and pharmacy charges of $31,179.68 incurred
by Appellee were reasonable charges for the services rendered to Appellee as a result of the June
11, 1992, collision. Dr. Thornton also testified the charges were necessary in the proper care and
treatment of Appellee as a result of the June 11, 1992, collision. Dr. Mattlage testified that the
Brazos Chiropractic Clinic bill of $5,337.14 was reasonable and necessary and was for injuries
sustained from the June 11, 1992, collision.
      Appellant asserts that some of the $31,279.68 charges, viz, Appellee's mammogram, flu
shots, treatment for internal bleeding, treatment for bunions, surgery for coritoid bruit, and some
others, were not related to the collision injuries.
      Appellee had many health problems before the collision including arteoarthritis, degenerative
joint changes and high blood pressure. There is evidence that all of the these problems were
aggravated and accelerated by the collision.
      The careful trial judge awarded Appellee only $20,000 of the $31,226.68 sought by Appellee
for past medical expenses relating to the accident. We have carefully examined the record and
conclude that there was sufficient evidence of $20,000 in past medical expenses related to the
collision and that the amount awarded is not manifestly unjust.
      Appellant asserts there is no evidence or insufficient evidence to support the trial court's
award of $31,200 for future medical expenses. Appellee had a life expectancy of 13.4 years. Dr.
Mattlage testified Appellee would require future medical treatment as a result of the collision that
would cost from $120 to $160 per week from now on. He based his testimony on his records from
his examinations of Appellee as well as the records of Dr. Fedro, Dr. Martin, and Dr. Veazey.
      Dr. Thornton testified that further medical expenses relating to the accident could be as high
as $300 per month, or as low as $50 per month. He testified the collision caused compression of
the prior condition of anterior wedging of the thoracic area and aggravated and incited such
condition which would require treatment and medication for pain control. He also testified that
Appellee's rotator cuff injury would require therapy and medication, to include an arthrogram
costing $200 to $500, and MRI scan of the right shoulder at a cost of $1,500 to $2,000; that
surgery on the shoulder would cost $5,000; and past surgical rehabilitation care could be as high
as $15,000.
      Dr. Thornton further testified that, based on reasonable medical probability, Appellee's pain
medication would run from $50 to $300 per month for the rest of her life. The evidence is ample
and sufficient to support the trial court's award of $31,200 for Appellee's future medical expenses.
      Appellant contends there is no evidence or insufficient evidence to support the trial court's
award of $85,000 for Appellee's past pain and suffering, and $90,000 for Appellee's future pain
and suffering.
      Appellee testified the pain she felt before the collision was very mild compared to what she
has felt since; that her pain since the collision is constant unless she's medicated; that her
headaches are so severe since the collision that she has to go to the hospital; that her head throbs
so that it affects her eyes; that she hurts from the top of her head to the bottom of her toes; and
that her back pain is constant. Her X-rays reflect that her degenerative changes involving the
thoracic spine are more prominent than before the collision.
      Sue Perkins, Appellee's sister-in-law, testified that Appellee complains of her shoulder hurting
and has been to the doctor several times for this. Dr. Veazey testified Appellee suffers from a
pounding sensation in the base of her skull and top portion of her neck. Dr. Thornton testified
that Appellee came to him because she was having a lot of pain after the collision; that she
complained of pain from the top to the bottom of her neck; pain in her cervical area, her thoracic
area and her lumbar area; that her pains are consistent with pain that compression fractures
produce; that Appellee' pre-collision X-rays do not show a compression fracture of the thoracic
spine; that Appellee has complained of wrist problems and rib pain for a year after the collision;
that Appellee had no symptoms of carpal tunnel before the collision; that, based on reasonable
medical probability, Appellee's rotator cuff injury, cervical pain, mid-thoracic pain, low back pain
and headaches were most likely caused or aggravated by the June 11, 1992, collision.
      As for the court's award for future pain and suffering, Dr. Thornton testified that Appellee
would continue to have pain and suffering in the future; that she would continue to have pain in
her shoulder, wrist, thoracic spine, cervical spine, lumbar spine, and in her chest wall for the
duration of her life.
      The trial court was presented with legally and factually sufficient evidence to support its
award as to past and future pain and suffering.
      Appellant asserts there is no evidence or insufficient evidence that Appellee has been
physically impaired $5,000 in the past and $10,000 in the future.
      Before the collision Appellee did pretty much whatever she wanted to; since the collision she
has become isolated; she cannot drive a car since the collision; and she cannot take care of her
home the way she did because of the bending required. She does not crochet anymore due to pain;
she cannot make a garden anymore, or trim the trees in her yard, or mow the grass anymore since
the collision. 
      Dr. Thornton testified she has diminished feeling of safety and security since the collision. 
He also testified she would suffer from future physical impairment from her shoulder, thoracic
spine, low back pain and neck pain; that she cannot do the routine things like picking up the
vacuum cleaner and putting it in the closet.
      A neighbor, Betty Tobias, testified that Appellee could not drive or visit relatives since the
collision, and she has to depend on others to take her to the grocery store and to doctor
appointments.
      Appellee's brother, Shorty Perkins, testified in a similar way; that she no longer bakes cakes,
walks, or plays cards; that she is more depressed and has aged noticeably since the wreck. Sue
Perkins, Appellee's sister-in-law, testified in a similar fashion.
      We think there is substantial competent evidence to sustain the trial court's award as to past
and future physical impairment. 
      Finally, Appellant asserts that the trial court's finding of $242,200 in damages is grossly
excessive. In determining whether damages are excessive, we apply the same test as for any
factual insufficiency question. Pope v. Moore, 711 S.W.2d 622, 624 (Tex. 1986). Applying such
test, we find the verdict is supported by sufficient evidence.
      Point two and its subheads A,B,C,D and E are overruled.
      The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed July 25, 1996
Do not publish