NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LINDSEY YANT, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

AMERICAN AIRLINES GROUP, *Respondent Employer*,

A I U INSURANCE CO, *Respondent Carrier*.

No. 1 CA- IC 24-0057

FILED 08-12-2025

Special Action - Industrial Commission
ICA Claim No. 20222940826
Carrier Claim No. 002210406095
The Honorable Amy L. Foster, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Joel F. Friedman PLLC, Phoenix
By Joel F. Friedman
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Jardine Baker Hickman & Houston PLLC, Phoenix
By Stephen C. Baker
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**        Lindsay Yant challenges an Industrial Commission of Arizona ("ICA") award closing her claim after an evidentiary hearing. She argues she should have been allowed to offer testimony in response to an issue that arose during her cross-examination of an expert witness called by Respondents American Airlines Group and AIU Insurance Co. Because we conclude that Administrative Law Judge ("ALJ") Foster deprived Yant of substantial justice by denying her request to provide other testimony, we set aside the award.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Yant has worked as a flight attendant for American Airlines since 2000. In October 2022, while on a layover, she fell after she "rolled" her right ankle on an uneven sidewalk. She noticed swelling the same day, but continued to work until she returned to Phoenix. Yant saw a physician, Rutvik Patel, D.O., two days after the injury. He diagnosed a "sprain of unspecified ligament of right ankle," prescribed medications, and provided work restrictions that required Yant to "be sitting 90% of the time."

**¶3**        Yant continued her treatment with Jason Lake, M.D., a board-certified orthopedic surgeon. Dr. Lake maintained Yant's work restrictions and prescribed physical therapy. Later in October 2022, Dr. Lake ordered an MRI of the injured ankle. Dr. Lake later testified that the diagnostic tests, including the MRI, showed a high-grade soft tissue sprain. Yant began wearing tennis shoes and a soft brace at work. She also taped her ankle.

**¶4**        Yant filed a workers' compensation claim, which the Respondents accepted in November 2022. Yant continued treatment with Dr. Lake.

¶5 In December 2022, Yant rolled her ankle again, this time on a flat surface while in her garage at home. According to Dr. Lake, the October ankle injury had not yet resolved, and the garage incident was likely caused by instability and weakness from the October injury. The garage incident prompted Dr. Lake to order another MRI in January 2023. According to Dr. Lake, the January 2023 MRI did not show a significant change. Yant reported that her ankle was sore for a few days, but it then went back to the way it was before the garage incident. Dr. Lake recommended surgical intervention after some months without a full recovery.

¶6 In March 2023, while working, Yant had to jump over another flight attendant who had fallen and was lying immobile in the aisle. She pushed off her left foot and landed on her right foot, experiencing immediate pain in her right ankle, which had not yet recovered from the prior injury. Another MRI showed, according to Dr. Lake, a "split in the tendon" that aggravated her existing injury. He later testified that the October 2022 ankle roll "set everything off," giving Yant an unstable ankle that contributed to the next two ankle incidents.

¶7 William Leonetti, D.P.M., a board-certified podiatrist with qualifications in foot and ankle surgery, performed an independent medical examination ("IME"). Before the IME, in March and April 2023, Dr. Leonetti reviewed Yant's medical records relating to her ankle injury, including the MRIs from October 2022 and January 2023. He concluded that she suffered a "very low grade" ankle sprain in October 2022 and that the December 2022 garage incident was unrelated to the October incident. In March 2023, he recommended conservative treatment, including physical therapy and an ankle brace, before her claim should be closed. In April 2023, after reviewing the March 2023 MRI, Dr. Leonetti concluded that Yant had reached maximum medical improvement and was stationary with no permanent impairment.

¶8 Based on Dr. Leonetti's conclusions, Respondents closed the claim with no permanent impairment and no supportive care. Yant timely requested a hearing.

¶9 In preparation for the hearing, Dr. Leonetti conducted a comprehensive IME, including a physical examination. He again concluded that Yant had suffered a low-grade soft tissue strain to her right ankle in October 2022 that had resolved and was stable by December 2022. He again concluded that the December 2022 garage incident was unrelated to her work injury and caused ankle instability. He described the March 2023

injury as a "low-grade exacerbation" of the December 2022 injury. He recommended no further active treatment.

¶10        During the hearing process, ALJ Foster, who presided over the case, scheduled hearing sessions for three witnesses: Yant, Dr. Lake, and Dr. Leonetti. ALJ Foster conducted the hearing sessions for Yant and Dr. Lake but was not present during most of Dr. Leonetti's direct testimony and cross-examination. A different ALJ, Judge Rushforth, conducted that session, noting she was "sitting in as a courtesy for Judge Foster, who remains . . . assigned to hear this case." The record contains no information about why ALJ Foster was absent or when the parties were informed of the change. Because the hearing session time allotment ran out before Dr. Leonetti's cross-examination concluded, ALJ Foster scheduled another session to finish the doctor's testimony. ALJ Foster conducted the resumed session, which consisted of the rest of the cross-examination of Dr. Leonetti, with no questions asked on redirect.

¶11        During Dr. Leonetti's testimony, heard by ALJ Rushforth, an issue arose about a notation made by Dr. Patel in the medical report of Yant's initial visit two days after her first ankle roll in October 2022. Dr. Patel noted that his physical examination of the ankle showed "[e]quivocal [a]nterior [d]rawer [s]ign" and "[e]quivocal [t]alar [t]ilt [t]est." Dr. Leonetti explained that the drawer sign and talar tilt test evaluate the stability of the lateral ligaments of an ankle joint. Twice during his direct testimony, Dr. Leonetti testified that Dr. Patel's notation that the tests were equivocal meant that the tests were equal:

> [T]hese [radiological] findings are consistent with the first . . . evaluation, where [Dr. Patel] stated equivocal anterior drawer signs and talar tilts, meaning they're equal. There's no pathology.

And again:

> In the notation . . . [Dr. Patel] specifically states that the anterior drawer and the talar tilt were equivocal, meaning equal.

On cross-examination, still in front of ALJ Rushforth, the following exchange took place:

> Q: Okay. Dr. Patel . . . did not diagnose a Grade 1 ankle sprain, correct?

> A: No. What his record specifically states is there is equivocal anterior drawer sign and equivocal talar tilt test, indicating that they're equal, comparatively. And there is absolutely no mention of instability with full foot and ankle strength listed as normal.
>
> Q: Dr. Patel only evaluated the right ankle. There's no reference to the left ankle in his report?
>
> A: Equivocal anterior drawer and equivocal talar tilt test.
>
> Q: Okay. It's your testimony that equivocal means the same as negative?
>
> A: Equal. Yes. In this particular case, yes. . . .
>
> Q: . . . The dictionary definition of equivocal does not mean – is not equal. Do you agree with that, or do you not know the dictionary definition of equivocal?
>
> A: Do you want to read that to me?
>
> Q: The dictionary definition of equivocal is ambiguous or uncertain. So it's not positive, it's not negative, certainly not equal. It means Dr. Patel could not tell from his evaluation if the anterior drawer sign and the talar tilt test were or were not positive. That's what equivocal means in the English language.
>
> A: Well, we would have to ask Dr. Patel what he meant by his statements. But, again, everything I read is that it's consistent with the MRI that was done on 10/21 of '22.

The presiding ALJ, Judge Foster, did not conduct this part of the hearing. At the end of the follow-up session to conclude Dr. Leonetti's testimony, which ALJ Foster did conduct, Yant's counsel requested that "Dr. Patel be called to testify to clarify his use of the term 'equivocal.'" Before he could conclude his request, ALJ Foster said, "No." When Yant's counsel finished his request, ALJ Foster stated, "Your request is denied." Yant later submitted the request in writing, reminding ALJ Foster that Dr. Leonetti raised the issue, testifying that he read Dr. Patel's notes to mean that the ankle tests were equal rather than uncertain or inconclusive. ALJ Foster denied the written request in the award.

**¶12**        ALJ Foster issued an award finding Yant had not shown "the need for further active medical care or that she has a permanent impairment" from the October 2022 injury. ALJ Foster also found that the March 2023 incident exacerbated Yant's right ankle injury, but it is not clear if the reference is to the December 2022 garage incident or the October 2022 work injury. The award does not address whether or how ALJ Foster reviewed the testimony of Dr. Leonetti, for which she was not present.

**¶13**        Yant requested administrative review of the award, contending, among other things, that she should have been allowed to call Dr. Patel to clarify his medical notes. Upon review, the ALJ affirmed the award without substantive comment.

**¶14**        Yant filed this statutory special action. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(2), 23-951(A).

## DISCUSSION

**¶15**        Although Yant raises multiple issues on appeal, because we find reversible error in the denial of her request to call Dr. Patel as a witness, we address only that issue.

**¶16**        When reviewing a workers' compensation award, we defer to the ALJ's factual findings but review questions of law *de novo*. *See Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). An ICA ALJ is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure but may conduct a hearing in a manner that "will achieve substantial justice." A.R.S. § 23-941(F); *see Ohlmaier v. Indus. Comm'n*, 161 Ariz. 113, 117 (1989) (The object of a hearing before an ALJ is "substantial justice."). Here, substantial justice was not achieved.

**¶17**        The issue about Dr. Patel's intended meaning of "equivocal" was raised for the first time by Dr. Leonetti in his direct testimony and again in his cross-examination. The issue was not resolved during the testimony, as Dr. Leonetti himself concluded that "we would have to ask Dr. Patel what he meant by his statements." Dr. Leonetti's interpretation of the word "equivocal" was a substantive part of his medical opinion. Clarification of what Dr. Patel meant was a material factor in weighing the expert witness's opinions. The ALJ should have continued the hearing to present the additional evidence.

**¶18**        Arizona Administrative Code Rule R20–5–156 establishes a flexible procedure for requesting and granting a continuance of a hearing if a party seeks to introduce more evidence. *Naglieri v. Indus. Comm'n*, 236

Ariz. 94, 97, ¶ 12 (App. 2014). A party's request must state the nature and substance of the new evidence, the other witnesses, and why the evidence or witness was not presented in the original hearing. A.A.C. R20–5–156(B). The party must make the request after the original hearing. *Id.* Continuances are permitted so that substantial justice will be achieved and all the facts of the case can be fully considered. *Id.*

**¶19** Yant correctly complied with the administrative rules. She noted that the issue arose during Dr. Leonetti's testimony. She identified its relevance and why it was necessary to resolve medical issues. And she raised it after the hearings. Compounding the problem, the presiding ALJ, Judge Foster, who ruled on the request, was not present during Dr. Leonetti's testimony on the meaning he gave the word and his suggestion that Dr. Patel clarify the issue.

**¶20** Our supreme court has been clear that live testimony, for both lay witnesses and expert witnesses, must be heard first-hand by the same fact-finder. In *Ohlmaier*, the court held that substantial justice was not achieved when different ALJs heard different parts of the testimony of the claimant and three physicians, thereby overturning the ruling of this court, which had required the same ALJ only when the credibility of a testifying claimant was at issue. 161 Ariz. at 114-15. In doing so, *Ohlmaier* found that "the function of substantial justice requires credibility resolution beyond the narrow question of truthfulness," concluding that "the one who decides the issue should be the one who hears the evidence." *Id.* at 118.[1] The court determined that the ICA denied substantial justice when more than one ALJ heard the testimony of the witnesses. *Id.* at 115.

**¶21** We have more recently applied this standard in setting aside an award closing a claim with no permanent impairment when the testimony of two witnesses was heard by two ALJs who were not the presiding ALJ: "As a rule, substantial justice requires that the resolver of testimonial conflicts, for either expert or non-expert witnesses, directly hear

---

[1] The supreme court also said: "[w]e do not imply that all testimony must be heard 'live.' In some cases, necessity dictates a different approach. Here the record provides no compelling circumstance why three judges must hear only part of the testimony." 161 Ariz. at 118-119 (citations omitted). The record before us is also silent on why it was necessary in this case.

all conflicting testimony." *Diaz v. Indus. Comm'n*, 1 CA-IC 19-0034, 2020 WL 3422848, at *3, ¶ 15 (Ariz. App. June 23, 2020) (mem. decision).

**¶22**     We conclude that the denial of Yant's request to call Dr. Patel as a witness to clarify the meaning of his use of "equivocal" was an abuse of discretion and a denial of substantial justice. The request was timely, and the testimony sought was relevant and material to a substantive issue in the case.

**CONCLUSION**

**¶23**     We set aside the award.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:                    JR